SETH F. HANCHETT, use, etc.

*v.*

SENECA D. KIMBARK *et al.*

*Filed at Ottawa June 12, 1886.*

1. EVIDENCE — *cross-examination* — *restrictions, and when a greater latitude may be allowed.* The rule is, that the cross-examination of a witness shall be restricted to such matters and things as he may have been examined upon in his direct examination.

2. But greater latitude is allowed on cross-examination, when the witness is one of the parties in interest, or an unwilling witness, than in the case of an ordinary witness. It is a matter of discretion to allow a wider range to the cross-examination of a party, and not confine it strictly to the matters elicited on the direct examination, and its exercise can not be assigned for error unless such discretion has been abused.

3. So where the court allowed a witness, who was a party to the suit, in his cross-examination, to be interrogated upon other subjects than those he testified about in his direct examination, and it did not appear that any injury resulted therefrom, it was held no ground to reverse the judgment.

4. SAME—*admissions and statements of the holder of a note, etc., as affecting the title of his subsequent assignee.* If the holder of a note, or other evidence of indebtedness, then due, which is claimed to be fraudulent as to other creditors of the maker, admits or states that the maker in fact owes him nothing, and afterward transfers the same to another, his admission is proper evidence against his assignee, who takes subject to all the equities against the assignor.

5. SAME—*statements of vendor of goods, in disparagement of his vendee's title.* The admissions of the vendor of goods in disparagement of his title, after the sale, are not admissible to defeat the title of his vendee to the property.

6. SAME—*statements of vendor after sale—to impeach him.* While it is true that the declarations of a vendor, after the sale of property, is not competent evidence against the vendee, yet if the vendor, when on the stand, denies having made declarations in respect to the fairness and genuineness of the sale, his attention being called to the time and place of making the same, it is competent to prove he did make such statements, for the purpose of impeaching his testimony.

7. SAME—*evidence to show fraud in purchase of goods.* On the question of the right of a vendor of goods to rescind the sale for fraudulent representations of the vendee as to his financial circumstances, and his intention, at the time of the purchase, not to pay for them, the vendor will have

the right to show the circumstances under which the goods were obtained, and the manner in which the vendee disposed of them.

8. And when the vendee, after his purchase, confessed a judgment in favor of his brother, and then sold all his goods, including those so purchased, to another creditor, who took an assignment of the judgment, and who had knowledge of facts tending to charge him with notice of the fraudulent intent of the vendor, it was held proper to admit evidence that the assignor claimed that before the confession of judgment his safe was opened by burglars, and $6000 or $7000 taken therefrom, and also to show that this claim was false, and only a pretence, as tending to show the intention of the assignor in obtaining the goods.

9. IMPEACHING JUDGMENT *confessed in fraud of creditors*. If a judgment is confessed by a party, for the fraudulent purpose of hindering, delaying and defrauding *bona fide* creditors, or a vendor of property purchased by him, such judgment is not to be taken as conclusive as between such fraudulent debtor and others attempted to be defrauded by him.

10. And so, when the evidence tends to show that a judgment confessed by a failing debtor to his brother is fraudulent, and not *bona fide*, but colorable, merely, an instruction that the records of the court introduced in evidence are conclusive, is properly refused. The party contesting the validity of such judgment has the right to show it was entered up with a fraudulent intent, and such an instruction might be taken as holding the judgment conclusive for all purposes.

11. PURCHASER *from fraudulent vendor—with and without notice.* A purchaser of goods, for the purpose of satisfying his own claim against the vendor, when he takes without notice of fraud, or the fraudulent title of the vendor, or without notice of facts sufficient to put him on inquiry, is entitled to protection.

12. But if a person fraudulently obtains the possession of goods by purchase, with intent not to pay for the same, a purchaser from him, with notice of facts sufficient to put a reasonably prudent person on inquiry with regard to the fraud, will not be protected as an innocent *bona fide* purchaser. Actual notice of the fraud is not necessary.

13. SAME—*of facts to charge a purchaser with notice of the fraudulent title of his vendor.* A creditor, at the time of taking a bill of sale of all the goods and effects of a failing debtor, knew that his vendor was indebted to another for goods then in the vendor's shop; that he claimed to have been robbed; that his account of the robbery was improbable; that he had confessed a judgment in favor of his brother, and was endeavoring to put his property out of his hands for the purpose of defrauding his creditors, and such creditor, before his purchase, had charged the debtor with fraud: *Held*, that these facts, so known to the creditor to whom the bill of sale was made, were sufficient evidence of notice to him of fraud in the original purchase of the goods by the debtor, as to submit the question of notice to the jury.

14. FRAUDULENT CONVEYANCE—*preference of creditor.* It is lawful for a debtor to prefer one creditor and pay him in full. Both parties to a sale must be cognizant of or participate in the intent to defraud creditors, to render the sale void.

15. INSTRUCTIONS—*a single one giving all the law of the case.* The practice of giving the jury, in one charge, all the law demanded by the facts of the case, instead of numerous isolated instructions, is sanctioned as a good one.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Messrs. SHUMAN & DEFREES, for the appellant:

In case of a sale and delivery, the title to the goods passes to the vendee. *Jennings* v. *Gage,* 13 Ill. 613; *Mowry* v. *Walsh,* 8 Cow. 238; *Rowley* v. *Bigelow,* 12 Pick. 307.

If goods are obtained by fraud, of the true owner, and fairly sold to an innocent purchaser having no notice of the fraud, the latter will be protected. *Mowry* v. *Walsh, supra; Parker* v. *Patrick,* 5 T. R. 175; *McCarty* v. *Vickery,* 12 Johns. 348; *Hollingsworth* v. *Napier,* 3 Caines, 182.

A person who has sold and delivered goods, upon credit, obtained by fraud, is bound to elect between a rescission of the contract and bring his suit in trover or replevin, or an affirmance of the contract and sue in assumpsit for the price of his goods. If a party rescinds for fraud, it must be *in toto,* and he can not have the benefit of both remedies in one action. *Kellogg* v. *Turpie,* 93 Ill. 265; *Bowen* v. *Shuler,* 41 id. 193; *Ryan* v. *Brant,* 42 id. 78; *King* v. *Mason,* id. 223; *Allen* v. *Ford,* 19 Pick. 217.

Although the object of a grantor may be to prevent his vendor from obtaining a reconveyance for fraud, this will not defeat the title of the grantee, if he purchased in good faith, without notice of the equities of the original owner. *Grant* v. *Bennett,* 96 Ill. 513; *Brown* v. *Riley,* 22 id. 45; *Gridley* v. *Bingham,* 51 id. 153; *Myers* v. *Kinzie,* 26 id. 36.

This court has said that the fraudulent design of a debtor in making an assignment, must be proved, and can not be established by mere suspicion, (*Blow* v. *Gage*, 41 Ill. 208,) and that the jury could not, from the mere fact that a mortgage had been made to hinder and delay creditors, infer that the purchaser of property was a party to it or had notice of it. *Brown* v. *Riley*, 22 Ill. 45.

Kimbark, as a simple contract creditor, could not question the *bona fides* of the transfer of this property, he not having a judgment, and an execution thereon returned *nulla bona. Stone* v. *Manning*, 2 Scam. 530; *Bigelow* v. *Andress*, 31 Ill. 322; *McConnell* v. *Dickson*, 43 id. 99.

An insolvent debtor has the right to prefer one creditor to others, by making him a sale of all his stock of goods, in payment of the debt, or in part payment. *Goembel* v. *Arnett*, 100 Ill. 34; *Tomlinson* v. *Matthews*, 98 id. 178; *Cross* v. *Bryant*, 2 Scam. 43; *Howell* v. *Edgar*, 3 id. 417; *Powers* v. *Green*, 14 Ill. 387; *Wilson* v. *Pearson*, 20 id. 87; *Finley* v. *Dickerson*, 29 id. 9; *Hesing* v. *McCloskey*, 37 id. 344; *Morris* v. *Tillson*, 81 id. 607.

Messrs. HUTCHINSON & PARTRIDGE, also for the appellant:

When a witness is called by the plaintiff to prove a single fact, the defendant can not go into a general examination of the witness. The cross-examination must be confined to the examination in chief. *Stafford* v. *Fargo*, 35 Ill. 486; *Hurlbut* v. *Meeker*, 104 id. 542; *Jackson* v. *Feather River Co.* 14 Cal. 24; *Warren* v. *Rowan*, 3 Washb. 580; *Bell* v. *Prewett*, 62 Ill. 366.

Statements made by William Morrison were only hearsay, and Huston's testimony as to such statements should not have been admitted. 1 Greenleaf on Evidence, sec. 180; *Parker* v. *Grout*, 11 Mass. 157; *Jones* v. *Witter*, 13 id. 304; *Dunn* v. *Snell*, 15 id. 481; *Page* v. *Cagen*, 7 Hill, 361.

Statements made by John Morrison subsequent to his sale to plaintiffs, were not competent evidence against plaintiffs, and the court erred in admitting them. *Gridley* v. *Bingham,* 51 Ill. 153; *Bennett* v. *Stout,* 98 id. 47; *Fyffe* v. *Fyffe,* 106 id. 646; *Benson* v. *Lomly,* 50 Iowa, 265; *Clews* v. *Kehr,* 90 N.Y. 633; *Bridge* v. *English,* 14 Mass. 245; *Clarke* v. *Waite,* id. 439.

Messrs. FLOWER, REMY & GREGORY, for the appellees:

It is not controverted that the cross-examination of a witness should be confined to the matter of his direct examination. But the rule has its exceptions. A witness may be cross-examined to show his interest or test his credibility. As to a party testifying, the rule permits a much more liberal and extended inquiry, limited only by the discretion of the trial court. Even in case of undue extension of the liberty of cross-examination of a witness, merely, a judgment will not be reversed. *Bell* v. *Prewett,* 62 Ill. 366.

Where fraud is alleged, courts should ever be liberal in allowing a searching cross-examination of the interested parties, when placed on the witness stand. *Brosseau* v. *Warren,* 6 Bradw. 450.

Greater latitude is allowed in respect to a party. *Railway Co.* v. *McMath,* 1 Bradw. 429; *Rea* v. *Missouri,* 17 Wall. 532; *Cramer* v. *Cullinane,* 2 McArthur, 197; *Holbrook* v. *Mix,* 1 E. D. Smith, 154.

The admissions of a predecessor in title are admissible against those claiming under him, if made when he was in possession. 2 Wharton on Evidence, secs. 1156, 1163.

It is contended that the court erred in permitting Huston and Miller to testify to admissions made by John Morrison after his sale. This testimony was offered and received for the purpose of impeachment, and was properly received.

The rule is well settled that a sale made on credit, and with a fraudulent intent not to pay for the goods, may be

avoided, even though no fraudulent representations were made as an inducement to it, and that in determining whether such fraudulent purpose exists, all circumstances attendant upon the sale, and the conduct of the ·purchaser thereafter, may be considered by the jury. *Hennequin* v. *Naylor,* 24 N. Y. 129; *Byrd* v. *Hall,* 2 Keyes, 647; *Johnson* v. *Morrell,* id. 655; *Devoe* v. *Brandt,* 53 N.Y. 462; *Tolcott* v. *Henderson,* 31 Ohio St. 162; *Gray* v. *St. John,* 35 Ill. 222; *Lockwood* v. *Doane,* 107 id. 235.

As to the notice to be brought home to a purchaser in order to charge him with knowledge of any defects in his vendor's title, see *Doyle* v. *Teas,* 4 Scam. 202; *Rupert* v. *Marks,* 15 Ill. 540; *Merrick* v. *Wallace,* 19 id. 486; *Morrison* v. *Kelly,* 22 id. 610; *Hatch* v. *Bigelow,* 39 id. 546; *Harper* v. *Ely,* 56 id. 179; *Babcock* v. *Lisk,* 57 id. 327; *Burt* v. *Coleman,* 89 id. 364; *Railroad Co.* v. *Kennedy,* 70 id. 350; *Life Ins. Co.* v. *Ford,* 89 id. 252.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of debt, brought by the sheriff of Cook county, for the use of Kelley, Maus & Co., on a replevin bond, executed by appellees to the sheriff, in an action of replevin, brought by S. D. Kimbark, against Kelley, Maus & Co., to recover certain goods which had been purchased by John Morrison from Kimbark, through, as is alleged, such fraudulent representations as to the financial standing of said Morrison, as to authorize the vendor to rescind the sale and recover the goods. After the goods had been recovered under the writ, Kimbark dismissed his action of replevin, and this suit was brought by the sheriff, on the bond, to recover the value of the goods. As a defence to the action, Kimbark set up that the purchase of the goods by John Morrison was fraudulent; that the sale from Morrison to Kelley, Maus & Co. was fraudulent, for the purpose of covering up the property for the

benefit of Morrison, and that the circumstances under which Morrison sold to Kelley, Maus & Co. were sufficient to charge them with the fraudulent character of his purchase from Kimbark. On a trial of the cause, before a jury, the issue presented was found in favor of Kimbark, and the plaintiffs recovered only nominal damages. On appeal the judgment was affirmed in the Appellate Court, and the plaintiff in the action, for the purpose of reviewing the decision of the Appellate Court, has prosecuted an appeal to this court.

When the case was presented at a former term, upon the argument presented, we entered an order reversing the judgment and remanding the cause for another trial. Under the rules of the court, Kimbark presented a petition for a rehearing, which was considered, and a rehearing ordered. The cause has again been argued, and upon further consideration of the case, as presented on the re-argument, we have arrived at a different conclusion from that reached when the case was first presented.

In order to determine properly whether the decision of the circuit court on the admission of evidence and the giving and refusing of instructions, which was approved in the Appellate Court, was correct or incorrect, it seems proper to allude to some of the leading facts in the case as established by the evidence.

In the month of January, 1883, John Morrison, who was engaged in the manufacture of carriages in Chicago, purchased, on credit, of Kimbark, a wholesale dealer in iron in Chicago, a bill of goods amounting to about $2500. The goods were delivered in different quantities and at different dates, from the time of purchase, during January, February and the first part of March. At the time of the purchase Kimbark required a statement from Morrison as to his financial condition, which was given, showing that his liabilities did not exceed $300, and that he was worth some $20,000, consisting of a farm in Michigan and property in Chicago.

From the time the bill of goods was ordered he continued business in Chicago until April 13, 1883, when, claiming that his safe had been robbed of some $6000 in currency, he confessed a judgment in favor of William Morrison, a brother, for some $2500. Execution was issued on this judgment, and levied on Morrison's goods. He then was taking steps to make an assignment, when he was induced by Kelley, Maus & Co., to whom he was indebted in the sum of $2500, to make a sale of his goods to them. They at the same time purchased the judgment which had been confessed in favor of William Morrison, and assumed the payment of $400 or $500 due Morrison's workmen. When the terms of the purchase were agreed upon, Kelley, Maus & Co. took a bill of sale and went into the possession of the goods,—amounting in value to between $6000 and $7000. They knew at this time that Morrison was in failing circumstances, and that he did not have sufficient property to pay his debts; that a part of the goods contained in the bill of sale had been purchased from Kimbark; that Morrison was attempting to defraud his creditors. There was also evidence introduced tending to prove that under the arrangement made with Kelley, Maus & Co., Morrison was to have whatever overplus should remain on sale of the goods, after the firm debt, and such advances as they made, should be paid.

On the trial, Charles B. Kelley, one of the plaintiffs, was called as a witness in behalf of the plaintiffs, for the purpose of proving the value of the property, the expenses incurred in the action of replevin, and that the property was not returned, and his examination in chief was confined to these subjects. On the cross-examination the court permitted the defendant to interrogate the witness upon other subjects, and this is relied upon as error. There is no doubt in regard to the general rule on this subject. It is well established by a uniform current of authority that the cross-examination of a witness is restricted to such matters and things as the witness

may have been examined upon in his direct examination. (*Stafford* v. *Fargo*, 35 Ill. 486; *Hurlbut* v. *Meeker*, 104 id. 542.) But while we fully concede the general rule on the subject, cases may arise where a strict observance of the rule will not always be required. More latitude is always allowed in cross-examination, where the witness is one of the parties in interest, or where the person is an unwilling witness, than in the case of an ordinary witness, and we think it safe to say, that a circuit court may, in its discretion, where a party in interest is a witness, allow the cross-examination to take a wider range; and where the cross-examination has not been confined strictly to the examination in chief, it will not be held error unless it appears that there has been an abuse of the exercise of a sound legal discretion. (*Rea* v. *Missouri*, 17 Wall. 533.) Here, much latitude was allowed on the cross-examination of the witness, but, so far as appears, no injury whatever was done to the plaintiffs, and we do not think that the judgment ought to be reversed unless it was apparent that the plaintiffs had been injured by the ruling of the court.

It is also claimed that the court erred in allowing the defendant to prove, by William Huston, the declarations of William Morrison, which were made four days before the sale of the goods, to the effect that John Morrison at that time owed him nothing. William Morrison was not a party to the suit, and it is claimed that his declarations were mere hearsay. It will, however, be remembered, that William Morrison, at the time the admissions were made, held a past due note against John Morrison, upon which a judgment was entered by confession, four days later, for some $2500, which was subsequently transferred to Kelley, Maus & Co, and they claimed that the judgment formed a part of the consideration for the purchase of the goods from John Morrison, while on the other hand, the defendant insisted that the note and judgment were fraudulent. The judgment may be treated as over-due paper, which Kelley, Maus & Co. took subject to all defences

that might be made against it, the same as if it had remained in the hands of John Morrison, and we are inclined to hold, that declarations made by him while he held the note and judgment, were admissible, under the doctrine laid down in 2 Wharton on Evidence, sec. 1163, as follows: "Where A, the possessor of a chattel or *chose in action,* assigns it to B, B takes it charged with equities which could have been maintained against A, supposing that B has notice, or ought to take notice, of such equities; and from this it follows, that B, under such circumstances, is as much exposed to the admission against him of A's self-disserving declarations as to such equities, as he would be to the admission of any other legal evidence going to establish such equities." See, also,. *Vennum* v. *Thompson,* 38 Ill. 144.

It is also contended, that the statements made by John Morrison, in the presence of William Huston, after the sale, in regard to the note which he had given to his brother, and in regard to the burglary, were not competent evidence. The admissions of John Morrison, in disparagement of his title to the property, after the sale, were not admissible to defeat the title of Kelley, Maus & Co. to the property, under the well known rule that declarations of a vendor after the sale of property are not competent evidence as against the vendee. But when John Morrison was on the stand as a witness, he denied that he had made certain statements in relation to the robbery, and the note given to his brother at a certain time and place, in the presence of Huston and Miller, and his statements were proven for the purpose of impeachment, and for this purpose the evidence was proper.

It is also argued, that the evidence is not sufficient to sustain the verdict. That was a question of fact for the jury, upon which the judgment of the Appellate Court, affirming the judgment of the circuit court, is conclusive here.

Evidence in reference to the alleged burglary of Morrison,. tending to prove that his claim in this regard was false, was

admitted, and this is claimed to be error. Kimbark claimed
the right to rescind the contract of sale under which Morrison
obtained the goods, and upon this branch of the case he had
the right to show the circumstances under which the goods
were obtained, and the manner in which Morrison disposed
of them. (*Lockwood* v. *Doane*, 107 Ill. 236.) On the night
before the judgment was entered in favor of William Morrison,
John Morrison claimed that his place of business was entered,
and $6000 or $7000 in currency taken from his safe. This
pretence doubtless led to the entry of the judgment, and the
judgment and contemplated assignment led to the sale of the
goods to Kelley, Maus & Co., and the admitted evidence in
relation to these transactions was competent, as bearing on
the intention of Morrison in obtaining the goods.

The court refused all instructions asked by the plaintiffs,
and embodied all the law thought to be applicable to the case
in one charge to the jury, and it is claimed that plaintiffs'
instructions 2, 8, 9 and 12 were proper and should have been
given. No. 2 in substance informed the jury that the records
of the court, introduced in evidence, are conclusive as to the
facts therein contained, and can not be disputed by other
evidence. This instruction was not proper, under the evidence
before the jury. The defendant had the right to show that
there was no foundation for the Morrison judgment,—that it
was fictitious, and entered up with a fraudulent purpose; and
yet, if the instruction had been given, the jury might have
been justified in concluding that the record of the judgment
was final and conclusive for all purposes.

As to instruction No. 8, its substance, or at least all of it
proper for the consideration of the jury, was embraced in the
charge which the court gave to the jury.

As to the ninth refused instruction, it was bad in one re-
spect, at least,—in this, that it required proof of actual notice
to Kelley, Maus & Co. of the fraud in the purchase of Mor-
rison from Kimbark. If they had notice of facts sufficient to

put a reasonably prudent person on inquiry in regard to the fraud, this was enough to charge them with notice of fraud.

As to the instruction No. 12, we think its substance was contained in the charge given to the jury by the court, found at the foot of page 33 of the abstract. The charge directs the jury that it is lawful for a debtor to prefer one creditor and pay him in full, as does the instruction. It also announces the principle, that a purchaser, with the intention of satisfying his own claim, where he purchases without notice of fraud or of facts sufficient to put him on inquiry, is entitled to protection. The instruction declares substantially the same thing in different language, declaring that both parties to the sale must be cognizant of and participate in the fraud. The instruction refused is perhaps somewhat broader in its terms than the charge, but at the same time we think the charge contained all that was required for the jury to comprehend their duty in considering the facts put in evidence, on this branch of the case.

It is also contended that certain portions of the charge given by the court to the jury were erroneous,—that it was complex, intricate and voluminous. That the charge is somewhat voluminous we readily concede. The court, however, instead of following the practice which usually obtains, of giving a large number of isolated instructions for each of the parties, gave to the jury in one charge all the law which it was thought the facts of the case demanded, and we are not prepared to say that there is any well founded objection to a practice of this kind, but, on the other hand, we think it a good one.

The principal objection made to the charge, as we understand the argument, is, that there was no evidence that Kelley, Maus & Co. had notice of any fraud in the purchase of the goods by Morrison from Kimbark, or notice of any fact sufficient to put them on inquiry, and consequently there was nothing upon which that part of the charge could be

properly based. If there was no evidence whatever on that branch of the case, an instruction would have been improper, as all instructions to the jury should be predicated on the evidence. But when the bill of sale was made, Kelley, Maus & Co. knew that Morrison was indebted to Kimbark for goods then in Morrison's shop. They knew that Morrison claimed to have been robbed; that his account of the robbery was improbable; that he had confessed a judgment in favor of his brother; that he was endeavoring to put his property out of his hands for the purpose of defrauding his creditors. They, through their attorney, charged Morrison with fraud, and threatened him with an action of attachment if he refused to settle with them. These and kindred facts were known to Kelly, Maus & Co. when they took an assignment of the goods from Morrison, and they were enough at least to authorize Kimbark to go to the jury on the question of notice of the fraud in the purchase of the goods by Morrison. It may be that the charge to the jury is not entirely free from slight error, but as a whole we regard it substantially correct, and we are satisfied that the jury was not misled by it.

The questions involved on the trial in the circuit court were closely contested, and were questions purely for the determination of a jury, and the finding, approved, as it has been, in the Appellate Court, can not be disturbed, unless the circuit court erred in questions of law, which we are not satisfied is the case.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*