# Alexander J. Alexander
## v.
## C. E. Mandeville.

*Master and Servant—Negligence of Servant—Personal Injury to Third Person—Master's Liability—Practice—Independent Contractor—Evidence —Instructions.*

1. The admission of incompetent evidence not made the subject of exception, can not be assigned as error.

2. The rule touching the non-liability of a master for the negligence of an independent contractor in his employ, is not affected by the fact that the contractor is paid the cost of the work and a given per cent instead of a fixed price.

3. If it appears in evidence in an action brought for the recovery of damages for an injury alleged to have been occasioned through the negligence of servants of the defendant, that several sets of men were engaged upon the premises in question when the accident occurred, and it is left to the jury to infer the cause of the injury, the fact being that for one set of the men the defendant was in no wise answerable, he is entitled to an instruction setting forth such fact.

4. It is proper for a trial court to give one connected charge in lieu of separate instructions asked by the parties, provided that such charge embraces all that the parties ask to which they are entitled.

5. An instruction of this character, which directs the attention of the jury away from the issue one of the parties has a right to present, is erroneous.

6. In such case, a contractor should narrate what happened in the making of his contract, and the conduct of the work, from which the jury must infer whether he acted independently of his employer or not.

7. It is proper to refuse to allow a party to examine at length, as his own witness, a person whom his adversary has called and examined as to the same matter, and whom the first party had an opportunity to cross-examine as to every circumstance. Additions to and explanations or qualifications of the testimony in chief, when part of the same transaction, should be brought out by cross-examination.

[Opinion filed Oct. 28, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Messrs. OSBORNE BROTHERS & BURGETT, for appellant.

In Glickauf v. Maurer, 75 Ill. 289, the question of " independent contractor" did not arise. The tenant of first story was entitled to have above him protection from storms. "It would be a strange doctrine, indeed, to hold that appellants could lease the first story of a building to appellee and receive the rent, and then employ a carpenter (under any sort of contract) to remove the roof, in consequence of which a valuable stock of goods should be destroyed, and then take refuge behind the men they had caused to do an act from which the damage resulted." (p. 291.) It was immaterial who was in possession of the upper stories. The landlord was under a duty to his tenant that he could not escape by any kind of contract with the men employed to put on the new roof.

In Schwartz v. Gilmore, 45 Ill. 455, the court used language (not called for by the case) which has been strongly criticised, and which is not law in Illinois nor elsewhere. See 2 Thompson on Negligence (4th Ed.), 913, 914. The facts involved in Daegling v. Gilmore, 49 Ill. 248, were the same as in Schwartz v. Gilmore, 45 Ill. 455. And if these two cases are carefully read, it will be seen that, in Schwartz v. Gilmore, the plans of the building were defective, and that the accident occurred by reason of defect in the plans rather than by the manner of doing the work. See 2 Thompson on Negligence, 900. Where plans are defective the owner will be liable for injury in consequence of the falling of the building, whether the

actual construction of the building is done by an independent contractor or not.    Hollenbeck v. Winnebago Co., 95 Ill. 148, 156–8; City of Joliet v. Harwood, 86 Ill. 110.    In Railroad Co. v. Hanning, 15 Ill. 649, the contractor agreed "to build it (the wharf) with such mooring posts, cluster-piles, etc., as the company, through their engineer, may require, making the old wharf as good as new; * * * to submit to the supervision and direction of the engineer of the company, and to do the work to his satisfaction."    Judge Hunt says: "They (company) may direct the number of mooring posts, cluster-piles, etc. * * * They are at liberty to direct how much material shall be used, and how it shall be laid to make the old wharf as good as new.    They are to supervise the work to be done.    They are to direct how it shall be done."

There is a doctrine peculiar to Massachusetts, and in looking at the decisions of its courts, that fact must be borne in mind.    Such doctrine is this: It is there held that a builder is a mere servant, and not an "independent contractor," unless he agrees to do the work for a *specific* and *fixed* sum of money named beforehand.    Forsyth v. Hooper, 11 Allen, 419; Brackett v. Lubke, 4 Allen, 138; Conners v. Hennessy, 112 Mass. 96.

In Linnehan v. Rollins, 137 Mass. 123, Elston was employed "to take down the entire building * * * or so much thereof as the trustees (defendants) may request. * * * All of said work to be done * * * under the direction and subject to approval of said trustees."    The jury were instructed: "This contract gives the defendants the right to control and direct the action of Elston.    It is not simply a provision that the work must finally meet with their approval before they pay him, but it is a provision that in the first instance he is to take down just so much of it as they desire, and that he is to do the work of taking down under their direction.    There is no other mode of construing it than so as to mean that he, by his contract, was subject to their order as to the time and manner and mode of doing the work, and that they had a right to step in and say to him, ' You are not doing this as we directed you to do it.    We direct you to do thus

and so, and we direct you to do this in the other way.'" . On appeal the exceptions to the charge to the jury were overruled.

Whether an owner of a building retains control over work to be done, and the manner of doing it, so as to render himself liable for injuries occasioned by the negligence of a contractor and his employes in the performance of the work—that is, whether the contractor is an "independent contractor"—depends upon the construction to be given to the contract by the court. Linnehan v. Rollins, 137 Mass. 123, 125-6, and cases cited.

In Clapp v. Kemp, 122 Mass. 481, the jury were simply told that, if the defendants "had the right to direct or control the mode or manner of such delivery (of the coal into the cellar), then the teamster would be the servant of the defendants."

In Stone v. Codman, 15 Pick. 297, ": it appeared that the defendant employed one Lincoln, a mason, to dig and lay a drain from the defendant's stores * * * into the common sewer; and that by reason of the opening made by Lincoln and the laborers in his employment, water was let into plaintiff's cellar, and his goods were wet." (p. 297.)

In Hilliard v. Richardson, 3 Gray, 349, 351, the court says that in Stone v. Codman, "There was no contract, written or oral, by which the work was to be done for a specific price or as a job. The case is expressly put upon the ground that between the defendant and Lincoln the relation of master and servant existed. * * * The work was under the control of the defendant. He could change, suspend or terminate it at his pleasure (and without liability to Lincoln). * * * The work was done by Lincoln, not on his own account, but on the defendant's. The defendant was, indeed, acting throughout by his servants." (pp. 351-2.)

In Brackett v. Lubke, 4 Allen, 138, a carpenter was employed to repair an awning. "At the trial * * * it appeared that * * * the defendants, being desirous of having one end of it (the awning frame) moved along six or eight inches, * * * engaged a carpenter to do the work, and, having told him what they wished to be done, gave him no further

directions." The court said: "The defendants are liable because it appears that the negligent act which caused the injury was done by a person who sustained toward them the relation of servant. There was no contract to do a certain specific job or piece of work in a particular way for a stipulated sum. It is the ordinary case where a person was employed to perform a service for a reasonable compensation. The defendants retained the power of controlling the work. They might have directed both the time and manner of doing it." See Shearman & Red. on Neg., 54th Ed. Sec. 165.

In Bernauer v. Hartman Steel Co., 33 Ill. App. 491, this court said: "The terms of the employment of Ruh are not given, and it must, therefore, be assumed that no special terms were agreed on. He was employed generally to do the required work. * * * His employer had the right to control and direct the entire work, and might have discharged Ruh from the employment if he refused to obey her instructions. The character of his employment bears no resemblance to that of an independent contractor."

The question of the extent of injury and damage to appellee is not to be determined by the appearances directly after his injury, but what were the extent of his injuries as shown during the two years that elapsed between the accident and the trial.

Messrs. E. H. & N. E. GARY, for appellee.

"If the employer reserves control or supervision over the mode and instrumentalities for doing the work, as if the work is to be done according to the direction of his architect or according to the directions of the employer himself, or if he in any manner reserves such control over the work, by himself or by his agent, as gives him authority to direct how the work shall be done, during its progress, so that the contractor and his workmen can be said to stand in the relation of servants to him, he is liable for their negligence." Wood's Master and Servant, 613.

"The fact that the employer reserves the right to change the plan of doing the work, or that the work shall be done

to the satisfaction of the employer, or of an agent appointed by him, or that the employer reserves the right to discharge any of the contractor's men, does not affect the question. The simple test is, who has the general control over the work? Who has the right to direct what shall be done, and how to do it? And if the person employed reserves this power to himself, his relation to the employer is independent and he is a contractor; but if it is reserved to the employer or his agents, the relation is that of master and servant. The contract being to do a certain piece of work, the mode of payment does not affect the relation." Wood's Master and Servant, 614.

"Where a landlord occupying the upper story of a building employed a mechanic to put in a sky-light in the roof, who neglected to cover the same, so that it rained through the opening and thereby damaged the goods of a tenant occupying the first floor, it was held that the landlord was liable to the tenant for the negligence of the mechanic in doing the work. This case is distinguished from Scammon v. City of Chicago, 25 Ill. 424, as there the owner gave the entire possession and control of the premises to the contractor." Glickauf v. Maurer, 75 Ill. 289.

Where the employer and owner of property employed a builder to erect a building thereon, who, by the terms of the contract, was to carry forward the work under the control of a superintendent, and " to remove all improper work or materials upon being directed to do so by the superintendent," to whose judgment, both as to work and materials, he agreed to submit, and whose acts the owner agreed to recognize, and the owner also reserved the right to change the plan, and the architect was declared to be the superintendent for the owner, *held*, " that the owner had not so far given to the contractor all control over the work and the premises as to be relieved himself of all responsibility for the injuries caused by the contractor's negligence." Schwartz v. Gilmore, 45 Ill. 455.

In Linnehan v. Rollins, 137 Mass. 123, a carpenter entered into a written contract with the trustees of an estate, by which he agreed " to take down the entire building known as the

Adams House in said Boston, belonging to said trustees, or so much thereof as the trustees may request," and which also provided as follows : " All of said work to be done carefully and under the direction and subject to the approval of said trustees." There was evidence to show that the plaintiff was injured through the negligence of the workmen employed by the carpenter under the contract. It was held that the trustees were liable for the injury so received.

"The defendants, if they were occupants of the store, would not be liable for the negligence or carelessness of the teamster, if, as the servant of Armor, he had the exclusive possession or control of the premises as far as was necessary to enable him to deliver the coal. But if the jury are satisfied that the defendants were at the time the occupants of the store, and, as such occupants, had the right to direct or control the mode or manner of such delivery, then the teamster would be the servant of the defendants, so as to render them liable for injuries occasioned by his negligence or carelessness in the delivery of the coal." Clapp v. Kemp, 122 Mass. 481 ; see Bernauer et. al. v. Hartman Steel Co., 33 Ill. App. 491.

Gary, P. J. The appellant and Mrs. Leiter owned buildings in the city of Chicago, separated by a party wall. They joined in erecting another story upon them, and employed Mr. Baumann as architect. He made plans, and Barney & Rodatz, a firm of masons, contracted with the owners, separately, to do the mason work on the buildings, furnishing their own materials and labor, to be paid therefor the cost, with ten per cent. added. The owners, by their agents, employed their own carpenters, superintended by their own foreman, to do the necessary carpenter work.

Barney & Rodatz had their own foreman on the work, under whose directions their men worked when Rodatz was not present. Barney took no part in the work, only going to it on pay days, to pay the men. The architect, by his plans and verbal instructions, directed what work should be done, and decided upon its sufficiency as done. In the afternoon of April 20, 1886, a mason's "horse," used for scaffolding, placed

on the roof of appellant's building by Barney & Rodatz, from a cause not shown by any direct evidence, fell from the roof to the sidewalk in front of the building, striking and injuring the appellee.

He sued both owners and the masons. On the trial the appellee obtained a verdict against the appellant only. It is not now necessary to decide whether the relations between the appellant and the masons were such as to make him responsible for negligence of their workmen, if such negligence was the cause of the accident. If the masons had been contractors for a fixed price, it would be difficult to fix responsibility upon the appellant under all modern authority.

The principle adopted in the old case of Bush v. Steinman, 1 Bos. & Pul. 404, that "he who has work going on for his benefit and on his own premises, must be civilly answerable for the acts of those he employs," has, in its application to the acts of independent contractors, been rejected, probably, by every court that has mentioned the case in the last half century. And that the contractors are paid cost and a per cent instead of a fixed price, makes no difference. Hale v. Johnson, 80 Ill. 185. There was evidence tending to show that there were upon the roof, when the "horse" went over, a carpenter, a laborer of the masons, and some telephone men doing something about wires which had been extended across, but not attached to, the appellant's building. There was a good deal of incompetent evidence as to the acts and declaration of divers persons after the accident, tending to show, and probably fairly showing, that the general opinion of all persons most nearly connected with the events was that the act of the laborer was the cause of the "horse" falling.

The appellant was a non-resident, not present during the progress of the work, or at the time of, or after the accident He is not to be affected by that opinion, but is entitled to an impartial finding of a jury upon original evidence of the events.

That incompetent evidence, however, is not made the subject of exception by the appellant, and its admission can not be assigned as error. It is alluded to only as indicating that

Alexander v. Mandeville.

the importance of the instruction asked by the appellant and refused by the court was obscured by the general belief that the laborer was the negligent person. That instruction was as follows: "If the jury believe from the evidence that the injury to the plaintiff, complained of here, was caused by the act or negligence of certain man or men in removing or changing the position of certain telephone or telegraph wires, and that such man or men was not, or were not, the agent or agents of the defendant, Alexander, or in his employ or service in doing such work, then the jury should not find a verdict against Alexander, but should find him not guilty."

The refusal can not be justified on the ground that there was no evidence to base it upon. The telephone men were not witnesses, and the laborer was not examined on the point of what caused the horse to fall. Why it fell is left wholly to inference from circumstances. The laborer was removing scaffolding which was in part supported by the "horse." What the telephone men were doing does not so clearly appear.

The burden of proof was upon the appellee. If the jury were to infer from the presence and employment of different men what act caused the "horse" to fall, and if for the acts of one set of men the appellant was in no event answerable, he was entitled to an instruction covering the point. See Riedle v. Mulhausen, 20 Ill. App. 68, and many cases there cited; especially P. M. & F. Ins. Co. v. Anapow, 45 Ill. 86, and Wooters v. King, 54 Ill. 343.

The court gave no instructions asked by any of the parties. If any other party than the appellant asked any, the record does not show it. But if they did, one connected charge, as was given in this case, in lieu of separate instructions asked by the parties, is good practice, provided that such charge embraces all that the parties ask, to which they are entitled. Hanchett v. Kimbark, 118 Ill. 121. So much of the charges as relates to the present question is as follows:

"If you find from the evidence that none of the defendants were personally guilty of negligence, but that some of the workmen on the building, while in the scope of their employ-

ment, were guilty of negligence, as charged in the declaration, and that such negligence caused the accident, and that such workmen were employes of either of the defendants, then you will determine from the evidence whether such workmen were the employes or servants of the owners of the buildings or the employes and servants of Barney & Rodatz. This involves the question whether Barney & Rodatz were doing the work on these buildings as independent contractors having sole charge of the mason work, and the sole right to hire and discharge the workmen engaged thereon, or whether they were simply acting as superintendents for the owners, and were themselves simply such employes or servants of the owners. Upon this point you are instructed, as a matter of law, that one who contracts to do a piece of work, and to furnish his own assistants, and to execute the work either entirely according to his own ideas, or in accordance with the plans previously furnished him by the person for whom the work is to be done, and without being subject to the orders of the person for whom the work is done, in respect of the details or manner of doing the work and having the sole right to hire and discharge assistants, such a person is a contractor, and not a servant or an employe.

" On the other hand, if the person for whom the work is done has a right to direct the details or manner of doing the work, from time to time, and to say who shall and who shall not work on the job, then the person for whom the work is done must be regarded as the employer, and those doing the work as his employes, and in that case it is immaterial whether the person for whom the work is done actually exercises the right to direct the details or manner of doing the work or not; nor will it in that case make any difference whether he actually interferes in the hiring or discharging of men or not; it is sufficient if he had the right to do it.

" Therefore, in this case, if you find from the evidence that such workmen or persons causing the accident were not guilty of negligence, or if guilty of negligence that they were not the employes of any of the defendants in this case, then you will find all defendants not guilty. If, however, you find from the evi-

dence that such workmen were guilty of negligence, that this negligence caused the accident, and that such workmen were the servants or employes of Barney & Rodatz, acting in the line of their employment, then you will find the defendants Alexander and Mrs. Leiter not guilty, and return a verdict of guilty as to Barney & Rodatz.

" On the other hand, if you find, from the evidence, that such workmen were guilty of negligence, that such negligence caused the accident, and that such workmen were, at the time of the accident, the employes of the owner or owners of the buildings, acting in the line of their employment—that is, that the owner or owners had the right to direct the manner of doing the work, and to say who should and who should not work on the job, then you will return a verdict of not guilty as to Barney & Rodatz; and, in that case, you will further determine from the evidence whether the defendants, Alexander and Mrs. Leiter, through their agents, were doing the work jointly—that is, in so far as the control of the employes was concerned—and whether such workmen at the time of the accident, were the employes of them both, to the extent of being under their control, and, if you so find, then you will return a verdict of guilty as to both Alexander and Mrs. Leiter.

" If, however, you find from the evidence that they were doing the work separately, and that neither had any control over the workmen engaged on the building of the other, and that said workmen were at the time of the accident the employes of Alexander alone, then you will return a verdict of not guilty as to Mrs. Leiter, and a verdict of guilty as to Alexander."

This charge does not, in terms, assume that it was the laborer who caused the "horse" to fall, and though, as a legal proposition, as it would be understood by lawyers (Nichols v. Mercer, 44 Ill. 250), a phrase or two in it would cover the point in the refused instruction, it was certainly liable to be misunderstood by the jury. It begins with the idea that "workmen on the building" caused the accident, and carefully informs the jury how they are to determine whether those workmen were

employed by the owners or the masons, and in no way alludes
to the telephone men. By the whole tenor of the charge, the
jury would be led to think only of the men employed in mak-
ing the addition to the building, and of the relations of the
several defendants in the suit to those men. It directed their
attention away from the issue the appellant had a right to
present. Trustees v. McCormick, 41 Ill. 323.

The refused instruction was not objectionable on the score
that it was based upon an isolated fact. If that fact were
found by the jury it would be a complete defense in itself,
not subject to any qualifications by anything else in the case.
As the judgment must be reversed for refusing this instruc-
tion, without putting the same matter clearly before the jury
in any other shape, the evidence has not been reviewed at the
length that would be necessary if the decision was based upon
it. The same may be said of some other complaints of the
appellant.

Rodatz was permitted to testify, over the exception of the
appellant, that "he hired the men to work for Leiter and
Alexander;" that he "had no control of anything." These
were only his conclusions. His testimony should have been
confined to a narrative of what happened in the making of his
contracts, and the conduct of the work, from which the jury
were to draw their conclusions.

Whether the evidence as to the extent of the injury to the
appellee justifies the damages for which judgment was ren-
dered is a point not considered.

On the point of practice, that the appellant was not per-
mitted to examine at length, as his own witness, a witness
whom the appellee had put upon the stand and examined as
to the same matter, and whom the appellant had then the
opportunity to cross-examine as to every circumstance, the
course adopted by the Superior Court was correct.

Additions to, and explanations or qualifications of, the tes-
timony in chief, when part of the same transaction, are to be
brought out by a cross-examination.

The judgment is reversed and the cause remanded.

                                    *Reversed and remanded.*