# Prussian National Insurance Company of Stettin, Germany, v. Empire Catering Company.

## Gen. No. 4,281.

1. INSURANCE POLICY—*effect of sole ownership clause in.* Under such a clause anything less than a sole and unconditional ownership will constitute a defense, and it is error in an action upon such a policy, where such a clause is pleaded in defense, to exclude evidence which tends to show that such sole and unconditional ownership did not exist in the plaintiff as to property for which recovery is sought.

2. AGENT—*when declarations of, are admissible against his principal.* Where a person with authority acts for another in the transaction of certain business, what he may have said respecting the subject-matter of such business is admissible against such principal as a verbal act and as part of the *res gestæ.*

3. CROSS-EXAMINATION—*when, improperly limited.* Where a witness has, upon direct, testified that certain property was owned by a particular person, it is proper upon cross-examination to inquire into the situation, location and character of such property, where such inquiry will tend to show that his testimony in chief was the statement of a conclusion.

4. CROSS-EXAMINATION—*discretion of court with respect to.* Within the bounds prescribed by the rule that cross-examination must be confined to the facts which the witness testified to in chief, the trial court

has a wide discretion as to the limits to which a cross-examination may extend; still this discretion should be exercised for the discovery of truth and in furtherance of justice, and not be so restrained as to defeat these ends.

Action of assumpsit upon insurance policy.  Appeal from the Circuit Court of Kane County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the October term, 1903.  Reversed and remanded. Opinion filed March 14, 1904.

JOSEPH E. PADEN and R. N. BOTSFORD, for appellant.

MORAN, MAYER & MEYER and MURPHY & ALSHULER, for appellee.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is an action in assumpsit on a policy of insurance for loss by fire to the property covered thereby.  On the 26th day of July, 1901, the appellant issued its policy of insurance to the appellee, Empire Catering Company, insuring it until the 26th day of July, 1902, to an amount not exceeding $2,500, against all direct loss by fire to the following described property :

Restaurant, bar, office and kitchen furniture and fixtures, useful and ornamental, including electric lighting apparatus, with all its connections, appurtenances, lamps, wiring and fixtures, electric and gas fixtures, electric bells and enunciators, electric passenger elevator and electric dumb waiters, marble wainscoting and mosaic floors, hardwood floors, tiling, marble stairway, partitions, pictures, engravings, mirrors and their frames, ornaments, statuary, bric-a-brac, wall and ceiling decorations, plate and stained glass, ranges, machines and their appurtenances, refrigerators, plumbing, gas, water and steam pipes and fittings, crockery, glass, earthen and hollow ware, silver and plated ware, cutlery, table linen, office stationery, supplies, safes, printed and advertising matter, tools, hose, implements, boilers, engines, pumps, heaters, electric motors, fans, ventilating apparatus, with their connections and appurtenances, shafting, hangers, pulleys and belting, and all articles, apparatus and appliances and utensils whatsoever, used in their business and on signs and awnings, improvements to buildings not otherwise insured, and attached to premises hereinafter mentioned, all while contained in, on and attached to the six-story and

basement, brick and stone building, and under sidewalk of same, situate and known as No. 260 S. State Street, Chicago, Illinois.

The following is one of the provisions of the policy : " This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void  *  *  * if the interest of the insured be other than unconditional and sole ownership."

A fire occurred on the 24th of February, 1902, by which the property described in the policy was damaged.    A controversy arose between the insurer and the insured in regard to the ownership of certain portions of the property enumerated in the policy of insurance.    The pleas were the general issue, one special plea setting up the stipulation in the policy in regard to ownership and the breach thereof, and the plea of *nul tiel* corporation.    The plaintiff replied and on the 9th day of June, 1903, a trial was had, resulting in a verdict by direction of the court for the appellee for the full amount of its claim, $1,276.99, its *pro rata* share of the loss.

The appellee claims as a part of its damages, that the following property was injured by the fire :

| | | |
|---|---:|---:|
| Mosaic floors ............................$ | 212 | 50 |
| Items submitted to Brunswick-Balke-Collender Company, improvements to building ....... | 1,472 | 20 |
| Wall and ceiling decorations ................. | 2,766 | 75 |
| Passenger elevator .......................... | 1,147 | 50 |
| Freight elevator ............................. | 148 | 75 |
| Four dummy elevators ....................... | 2,526 | 20 |
| Filter sinks and connections ................. | 257 | 30 |
| Electric wiring throughout building ........... | 1,408 | 45 |
| Plumbing throughout building ................ | 1,293 | 19 |
| Improvements to building .................... | 836 | 06 |
| Hardwood floors ............................. | 540 | 60 |
| | $12,609 | 50 |

It is shown that C. H. Colby, secretary of appellee, in a conversation had with Mr. Wells the day after the fire,

stated that the appellee had a lease to the property where the fire occurred, and that Mr. Gregory, who was the adjuster representing the appellee, promised Mr. Wells to bring the lease down to Mr. Wells' office for his inspection. It is also proven that subsequently Mr. Gregory brought a lease to the office which was copied by Mr. Olsen, a clerk in Mr. Wells' office. The lease was made between Charles F. Gunther, lessor, and Charles O. Smith, lessee, on the 14th day of March, 1900, and conveyed the premises known as No. 260 S. State street, Chicago, for a term of seven years, for the cash consideration of $49,000 and the covenants of the lessee.

The only clause in said lease that is material to the controversy here is the following:

" Said second party shall further have the right and privilege, at their own expense, to place a steam heating plant, also an electric light plant, in the basement of the building herein described, and that at the expiration of this lease, said second party shall have the right, except as herein provided, to remove from said building electric dynamo and engine they may have placed there, also the right to remove all steam radiators, gas and electric light chandeliers and brackets, and all furniture and fixtures used in connection with their business, without injury to the property in removing same.

It is expressly agreed by and between the parties hereto that the passenger and freight elevators, and all appurtenances thereto, also the stairways, boiler and all water and steam pipe connections, except the radiators, all plumbing and water closets, also floors and all other improvements, except those expressly mentioned hereinbefore, which said second party shall make in building herein described shall as a part of the consideration of this lease become the property of the said first party without any further moneyed consideration therefor, and shall remain in the building in good condition at the expiration of this lease."

Charles F. Gunther testified that he made the lease to Charles O. Smith; that he was then and still is the owner of the premises known as No. 260 S. State street, and that he had not made any other lease or other document relating to the occupancy or possession of the property. He

produced and identified the lease.  Appellee, after laying the proper foundation therefor, offered the copy of the lease made by Mr. Olsen, in evidence, to which the court sustained objections.  The lease produced by the witness Gunther was then offered in evidence by appellant, and upon objection being made it was also excluded.  These rulings of the court are assigned as error.

The issue raised by appellant's special plea, which set up the clause in the policy already referred to, constituted a good defense if sustained by the proof.  Under this clause in the policy, if the title of appellee was anything less than the sole and unconditional ownership, it would constitute a defense to all claim for any property, the title to which was not exclusively and unconditionally in the assured. Reaper City Ins. Co. v. Brennan, 58 Ill. 158; Palatine Ins. Co. v. Hebner, 157 Ill. 144; Crikelair v. Citizens Ins. Co., 168 Ill. 609.  The only proof of title in the appellee offered on the trial was the testimony of C. H. Colby who testified that the Empire Catering Co. was the owner of the property damaged, and that the appellee had paid for it.  Assuming the competency of this evidence, it was certainly not conclusive.  It was the undoubted right of the appellant to show by any competent proof that the Empire Catering Co. was not the sole and unconditional owner of the property or some part of it.  This the appellant sought to do by showing, by the admission of C. H. Colby, who was the secretary of the Empire Catering Co., that it held and occupied No. 260 State street by virtue of a lease, and that by the terms of the lease it made certain additions, improvements and fixtures, the property of the lessor.  All this evidence relating to the lease was excluded by the court.  If this policy had been upon a six-story brick building known as No. 260 State street, and the proof was that the appellee was only a lessee of the building for a term of years for a given rental, could it be contended it would be the sole and unconditional owner of the building within the meaning of this policy ?  Under the above supposition, could appellee sue for and recover the value of the lessor's

building? If not, why not? He would not be the sole and unconditional owner.

Under the lease offered in evidence, and excluded by the court, it is provided that the elevators and appurtenances, stairways, boilers, water and steam pipe connections, all plumbing, water closets, floors and other improvements made in building  *  *  *  shall become the property of the lessor without any further money consideration, and remain in the building at the expiration of the lease. Under this contract between the parties to this lease, the question of title to certain items, embraced in appellee's claim against the insurance company is vested in the lessor, and the right and interest of the appellant with respect to these items is merely the right to use and enjoy them the same as it does the building or the appurtenances thereto which were attached to the building when the lease was executed. The fact that the Empire Catering Co. at its own expense made these improvements, does not determine the question of title; that must be determined by the contract and the intention of the parties.

It is said the lease was in the name of Charles O. Smith and not the Empire Catering Co. If the appellee is not in possession by virtue of the Smith lease, then by what right, title or claim is it in possession? Gunther made but one lease and that is to Smith. The position of appellee is not made better by disclaiming the Smith lease. If the appellee went in as an intruder and a trespasser and laid floors, stairways, put in plumbing and other like improvements on Mr. Gunther's house, the title would vest in the owner of the house. But the conclusion is irresistible that either as assignee or sub-lessee the Empire Catering Co. held under the Smith lease. Colby admitted to Wells that the company held under a lease, and when the lease was produced by Mr. Gregory it is found to be a literal copy of the lease produced by Mr. Gunther on the trial. We think the evidence offered was competent, notwithstanding the fact that the lease stood in the name of Charles O. Smith.

In this connection appellant offered to prove that Charles O. Smith was one of the original incorporators, owned one-third of the stock and had been the president of the Empire Catering Co. This evidence was also excluded, and we think erroneously, since his relation to the appellee tended to strengthen the theory that the appellee was in possession of the premises by virtue of the lease running in the name of one of its chief stockholders and an official of the corporation. The copy of the lease should have been admitted in evidence for the reason it tended to show that the lease under which the appellee held the premises, contained the identical language of the Gunther lease, and connected the Empire Catering Co. with the Gunther lease. The original lease of Gunther to Smith was proper evidence and should have been allowed to go to the jury, for the reason that it defines the rights of the parties to the property in dispute. The appellant offered to prove by the witness Olsen, that he had a conversation with Mr. Gregory, who was the adjuster of the appellee, in which certain admissions of Mr. Gregory respecting the lease were made. Mr. Gregory was the representative of the appellee in relation to the adjustment of this loss. Whatever he did in the lawful prosecution of that business was the act of the Empire Catering Co.; clearly, what he may have said respecting the subject-matter, if made while still engaged in the principal's business, is also admissible as a verbal act and part of the *res gestæ*. 1 Green., sec. 113.

The court sustained objections to the evidence of the appellant, which was offered to prove the articles of property in dispute were attached to the building, and also refused appellant the right to cross-examine the witness Colby in regard to the same subject. In these rulings there is manifest error. Colby had testified that the items of property in dispute belonged to appellee; it was clearly proper to ask him on cross-examination about the situation, location and character of the property and its relation to the building. especially in view of the fact that this might bring out facts which would show that what he had testi-

,fied to as a fact with respect to the title of this property, was, in truth, simply the conclusion of the witness drawn from facts which, under the rulings, were not permitted to go to the jury. A witness might very conscientiously say that because the Empire Catering Co. had paid for these improvements they belonged to it, and were its property, yet a state of facts might exist which when developed on cross-examination would show that the title was not in fact in the appellee. Within the bounds prescribed by the rule that the cross-examination must be confined to the facts which the witness has testified to in chief, the trial court has a wide discretion as to the limits to which a cross-examination shall extend; still this discretion should be exercised for the discovery of truth and in furtherance of justice, and not be so restricted as to defeat these ends. Hanchett v. Kimbark, 118 Ill. 121.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*