|138   347|
|179   498|

# THE FIRST NATIONAL BANK OF MONMOUTH

*v.*

## MARTHA STRANG, Admx.

*Filed at Ottawa June 15, 1891.*

1. BANK—*reorganization—liability of new bank.* Where a bank, on the termination of its charter, and after its successor was organized under the National Banking law, turned over to the latter United States bonds which it held on deposit, and the latter collected and paid to the depositor various installments of interest thereon, it was *held,* that such payment of interest was evidence of the new bank's possession of the bonds, and that it was liable in trover for their value, on refusal to deliver them on demand.

2. Where a bank received bonds on deposit, and collected and paid the interest thereon up to the expiration of its charter, and a bank of the same name, with the same officers, directors and stockholders, was organized, taking all the assets and property of the former bank, including the bonds on deposit, and for some time thereafter collected and paid over the interest on such bonds, it was *held,* that the new bank was not a *bona fide* purchaser of the bonds without notice of the depositor's rights, and that the receipt for the bonds given by the cashier of the first bank, and his admissions in respect to the deposit and ownership of the bonds, were evidence against the new bank, upon the principle of privity of title, interest and possession between the two corporations in respect to the bonds.

3. CHOSES IN ACTION—*transfer with notice of equities—declarations of former possessor.* The principle that the declarations and admissions of a former owner or possessor of property against his interest, made during the continuance of his interest or possession, are evidence against those subsequently obtaining possession of title from him, is applicable equally to personal property and to choses in action, as to real estate.

4. Where the possessor of chattels or choses in action transfers them to another, such other takes them charged with all rights and equities which could have been maintained against the former possessor, provided it appears that the transferee is chargeable with notice ; and in such case the transferee is as much exposed to the admission in evidence against him of the self-disserving declarations of such former possessor in respect to such rights or equities, as he would be to the admission of any other legal evidence going to establish such rights or equities.

Writ of Error to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Warren county; the Hon. T. M. Shaw, Judge, presiding.

Messrs. Kirkpatrick & Alexander, and Mr. R. J. Grier, for the plaintiff in error:

The declarations of Hubbard, or the receipt given by him in 1879, or any of his acts during the existence of the old bank and before he was an officer of the defendant bank, could in no way be evidence against the new bank to bind it, or even to show the existence of the bonds.   At the expiration of its charter the old bank was legally dead, except for the winding up of its business.   Angell & Ames on Corp. chap. 22, sec. 778a; *Colby* v. *First Nat. Bank,* 21 Wall. 609.

The two banks were distinct corporations.   *Bellows* v. *Bank,* 2 Mason, 44; *Blair* v. *Railway Co.* 22 Fed. Rep. 36; *Wyman* v. *Bank,* 14 Mass. 57; *Bruffett* v. *Railway Co.* 25 Ill. 353; *Cook* v. *Railway Co.* 43 Mich. 349; *Railway Co.* v. *Griffin,* 92 Ind. 487; *Neff* v. *Broom Co.* 50 Wis. 585; *Menosha* v. *Railroad Co.* 52 id. 414; Morawetz on Corp. sec. 566; *Booth* v. *Bunce,* 33 N. Y. 131.

The declaration or admission of an agent does not bind the principal, if not made at the very time of the contract.   Story on Agency, secs. 135-137.

The new bank was under no obligation to pay or collect the interest on the bonds.   *Henry* v. *Bank,* 63 Ala. 527; *Bank* v. *Dunn,* 6 Pet. 51; *Bank* v. *Jones,* 8 id. 12; *Bank* v. *Bank,* 17 Mass. 1; *Wyman* v. *Bank,* 14 id. 58; *Grimshaw* v. *Paul,* 76 Ill. 164; *First Nat. Bank* v. *Bank,* 60 N. Y. 278; Morse on Banks and Banking, 188, 543; *Savings Bank* v. *Parmalee,* 5 Otto, 557.

In trover, the plaintiff must prove a conversion of the property by the defendant.   1 Chitty's Pl. 156; 2 Greenleaf on Evidence, sec. 642.

A demand and refusal does not of necessity prove a conversion unless it is shown the party has it in his power to deliver up the goods, and with good cause refuses to do so.   1 Chitty's Pl. 160; 2 Greenleaf on Evidence, sec. 644; *Kime* v. *Dole,* 14 Bradw. 308; *Race* v. *Chandler,* 15 id. 532; *Wiley* v. *First Nat. Bank,* 47 Vt. 546; *Sturges* v. *Keith,* 57 Ill. 451.

Messrs. Matthews & Peacock, and Mr. James A. McKenzie, for the defendant in error:

The question of power of a national bank to receive special deposits, and give receipts for them, is settled.   Rev. Stat. of U. S. sec. 5228; *Bank* v. *Schley,* 58 Ga. 369; *First Nat. Bank* v. *Graham,* 100 U. S. 699; *Bank* v. *Dunbar,* 118 Ill. 625.

There is no word of evidence tending to show that at the time the old bank went out of existence these bonds were not in the safe, and if so, they were there the next morning, and the cashier, who alone had the combination of the safe, knew it, and his knowledge was the knowledge of the new bank. *Bank* v. *Dunbar,* 118 Ill. 625.

Not only the admissions and declarations of parties to the record are admissible, but also the acts and declarations of those who are in privity with them.   1 Greenleaf on Evidence, secs. 189, 190.

We are entitled to it upon the ground of privity.   *Vennum* v. *Thompson,* 38 Ill. 144; 2 Smith's Lead. Cas. 390; 2 Wharton on Evidence, sec. 1163; *Mueller* v. *Rebhan,* 94 Ill. 149; *Hanchett* v. *Kimbark,* 118 id. 129.

The demand and refusal are not claimed by us to be conclusive evidence of a conversion, but they are *prima facie* evidence.   1 Chitty's Pl. 157; 2 Greenleaf on Evidence, sec. 644; *Johnson* v. *Howe,* 2 Gilm. 342; *Bruner* v. *Dyball,* 42 Ill. 34.

Demand and refusal are both proved and admitted.   Then they must account for the bonds.  They have utterly failed to do so.   No reasonable mind, from this evidence, can decide what finally became of the bonds.   If we take the view that

Hubbard sold them for the benefit of the bank, no demand and refusal are necessary. *Bank* v. *Dunbar*, 118 Ill. 625.

Mr. Justice Baker delivered the opinion of the Court:

In this suit Martha Strang, administratrix of Janet Strang, deceased, defendant in error, recovered judgment in the circuit court of Warren county, upon a count in trover, for $4527.93 damages, against the First National Bank of Monmouth, plaintiff in error, and the judgment was affirmed in the Appellate Court.

The cause was tried in the circuit court without a jury, and that court found the issues on the counts in *case* for plaintiff in error, but found it guilty of trover and conversion, and that finding, and the judgment rendered thereon, followed by the judgment of affirmance in the Appellate Court, conclusively settled all questions of fact involved in the count for trover in favor of defendant in error.

The facts of the case, as settled by the adjudications below, are, that the First National Bank of Monmouth was organized in 1863, and by its articles of association its existence was limited to nineteen years, and the treasury number of its charter was 85; that in 1873 the intestate of defendant in error deposited with it for safe keeping $3100 in 6-40 and 7-20 United States bonds, taking its receipt therefor, and that said bank paid said intestate the interest accruing on said bonds from time to time, as it fell due; that in 1879 said bonds were called in by the government, and said bank, at the request of intestate, exchanged them for $3100 in United States four per cent bonds, the interest on which was payable on July 1, October 1, January 1 and April 1 in each year, and thereupon took up its receipt for bonds first given, and substituted therefor its receipt for four per cent bonds, which receipt was as follows:

"$3100.                    MONMOUTH, ILL., *July 24, 1879.*

"Received of Mrs. Janet Strang, for safe keeping in our bank safe, thirty-one hundred dollars, United States four per cent bonds, interest payable July 1, October 1, January 1 and April 1.                    B. T. O. HUBBARD, *Cashier.*"

That the bonds mentioned in said last receipt were retained by said bank in its possession until the expiration of its charter, in 1882, when it went into liquidation and its affairs were closed up, and that every three months it paid the interest on said bonds, amounting to $31 quarterly, out of its general fund, and over its counter and during its business hours, to intestate or to defendant in error, her agent; that on July 7, 1882, the stockholders of the bank organized a new bank, under the same name as that of the old one,—*i. e.*, "The First National Bank of Monmouth,"—but with treasury number 2751, and the president, cashier and other officers of the old bank became the president, cashier and officers of the new bank, and the directors of the old bank, with one exception, became the directors of the new bank; that the new bank began business, on or about the date of its charter, in the banking room theretofore occupied by the old bank, and the old bank transferred to the new bank all the property and assets in its possession, except a surplus of $50,000, which was divided among its stockholders; that the new bank (number 2751) having thus obtained possession from the old bank (number 85) of the $3100 in four per cent government bonds belonging to the intestate, continued for seven consecutive quarters to pay to defendant in error, who was then agent and daughter of her since deceased intestate, out of its general funds, over its counter and during its business hours, the quarterly installments of interest, being $31 each, falling due on said bonds; that in April, 1884, a national bank examiner took possession of said bank number 2751, plaintiff in error here, and one Guy Staff was appointed receiver thereof; that

no package or special deposit was found in the bank, or in its vault, or in its safe, marked or indicated as belonging to the intestate, and no United States bonds found in the bank other than $50 in four per cent bonds and $350 in four and one-half per cent bonds, which were found in the bank safe and scheduled as part of the bank's assets, and that thereupon the intestate made demand, in writing, upon the president of the plaintiff in error for the $3100 in four per cent government bonds here in question, and that said bonds were not delivered on such demand.    The ultimate facts determined by the courts below are, that plaintiff in error wrongfully converted said bonds to its own use, and that defendant in error's damages occasioned thereby are $4527.93.

At the trial in the circuit court no written propositions were submitted by either party to be held as law in the decision of the case, and so there are no questions in the record that can now be considered by us, other than such as arise upon the rulings of that court in respect to the admission or exclusion of evidence.

It is claimed by plaintiff in error that the court improperly admitted in evidence, over its objections, the receipt of July 24, 1879, and oral testimony of statements and admissions made at or about that date by B. T. O. Hubbard, and that therefore there was no competent evidence before the court to establish that $3100 in United States four per cent bonds, belonging to intestate, ever came into the possession of the First National Bank of Monmouth, number 85, or were by that bank turned over to the possession of the "First National Bank of Monmouth," number 2751.    The contentions of plaintiff in error are, that upon its organization it became, both in law and in fact, a wholly different bank and corporate entity from the prior bank of the same name but with the treasury number 85; that the receipt for the $3100 in bonds is but an admission in writing, and is governed by the law in regard to admissions; that said receipt was signed by Hubbard while cashier of bank

number 85, and that the oral statements and admissions made by Hubbard that the 6-40 and 7-20 bonds had been exchanged for four per cent bonds, and that the latter were in possession of the bank, were made while he was such cashier, and were to be regarded as the receipt and admissions of Hubbard per-·sonally, or of bank number 85, and were long prior in date to the legal existence of plaintiff in error as a corporation, and inadmissible in evidence, as against plaintiff in error, for the purpose of establishing the fact that bank number 2751 was ·ever in possession of the bonds, either upon the ground of the legal identity of the two banks, or upon the theory that Hub-bard, in 1879, was in some way the agent of plaintiff in error.

We are not inclined to antagonize any of these contentions· ·of plaintiff in error; but the trouble with his argument is, that it does not go far enough for the exigencies of the case. It ·clearly appears from the evidence that upon the organization ·of plaintiff in error, in July, 1882, Hubbard became its cashier, ;and continued to be such cashier until the bank was closed by the government authorities, in 1884, and that during that time he made, at regular intervals, seven quarterly payments, of' $31 each, to defendant in error, who was acting as agent of Janet Strang, since deceased; that such payments were made· ·over its counter, during its usual business hours, and out of· · its general funds, and that such payments were made expressly ·as "interest on bonds." The reasonable conclusion from this ·circumstance .would be, that the bank had in its possession bonds belonging to Janet Strang upon which $31 interest ac-·crued and was paid at regular quarterly intervals. The acts ·and admissions of Hubbard while in the performance of his ·duties as cashier of bank number 2751, were the acts and .admissions of the bank itself. It also clearly appears that ·upon the winding up of the old bank and starting out of the ·new bank, all the special deposits and assets in the vault, safe ·or possession of the former, except the $50,000 surplus, were ·transferred to the possession of the latter. The fact also

23—138 ILL.

clearly appears that from July, 1879, until the date of such transfer, in July, 1882, quarterly payments of $31 each were regularly and continuously made by bank number 85, by the hands of its cashier, over its counter, during its business hours and out of its general funds, to defendant in error, as agent of Janet Strang, and that such payments were made on the first days of January, April, July and October in each year; and also the facts that these payments were always made by B. T. O. Hubbard, cashier of bank number 85; and also that, after the transfer, said Hubbard, who had become cashier of bank number 2751, continued to make like payments of $31 each, down to and including July 1, 1882.   These several facts and circumstances show, at least *prima facie,* and without any aid from the receipt of July 24, 1879, or from the verbal statements and admissions of Hubbard made on or about that date, that the bonds upon which plaintiff in error made seven quarterly payments of "interest on bonds" were in the possession of bank number 85 for a period of some three years, and then by it transferred to the possession of bank number 2751,—in other words, plaintiff in error succeeded to the possession and title of bank number 85 in respect to the bonds or subject matter upon which such payments of interest were continuously made.

It is well settled that the principle that the declarations and admissions of a former owner or possessor of property, against his interest, made during the continuance of his interest or possession, are evidence against those subsequently obtaining possession or title from him, is applicable equally to personal property and to choses in action as to real estate. (See note to *Bauerman* v. *Radenius,* 2 Smith's Leading Cases, and authorities cited on page 390.)  Where the possessor of chattels or choses in action transfers them to another, then such other takes them charged with all rights and equities which could have been maintained against the former possessor, provided it appears that the transferee is chargeable with notice;

and in such case the transferee is as much exposed to the admission in evidence against him of the self-disserving declarations and admissions of such former possessor in respect to such rights or equities, as he would be to the admission of any other legal evidence going to establish such rights or equities. 2 Wharton on Law of Evidence, sec. 1163; *Hanchett* v. *Kimbark et al.* 118 Ill. 121.

In the case at bar there is not, and owing to the indentity of the officers, directors and stockholders of the two corporations could not, in the nature of things, be any claim that plaintiff in error was a *bona fide* purchaser, without notice, of the bonds; and besides this, its frequent payments to defendant in error of the interest on bonds was wholly inconsistent with and contradictory of any such theory. And so, although plaintiff in error is a different and distinct legal entity from the banking corporation that preceded it, and although Hubbard, when, on or about July 24, 1879, he signed the receipt and made various verbal statements and admissions, was not an officer or agent of plaintiff in error, and on that ground authorized to make admissions which would be evidence against it, yet such receipt, statements and admissions were competent evidence against it, in this suit, upon the principle of privity of title, interest and possession between the two corporations in respect to the bonds upon which interest was paid by each. Our conclusion, then, is, that it was not error to admit in evidence said receipt and admissions; and the circumstance that their introduction in evidence was prior to the production of the testimony showing, *prima facie*, such privity, was at most a mere irregularity, and not reversible error.

It is, as has heretofore been suggested, conclusively settled by the adjudications of the circuit and Appellate Courts that the bonds came to the possession of the plaintiff in error and were by it converted to its own use, and that the value of the bonds at the time of such conversion was $4527.93. Assuming, as we must, these to be the ultimate facts of the case, it

follows that plaintiff in error is liable for the wrong it committed, and that the doctrine of *ultra vires* has no application to the case. But, besides this, the provision in section 5228 of the Revised Statutes of the United States, that a national bank, after its failure, may "deliver special deposits," is an effectual recognition of its power to receive special deposits. These two latter points were expressly so decided by the Supreme Court of the United States in *National Bank* v. *Graham*, 100 U. S. 699. And to the same effect was the decision of this court in *First National Bank of Monmouth* v. *Dunbar*, 118 Ill. 625.

Finding no error in the record, we affirm the judgment.

*Judgment affirmed.*