HOUSEHOLD FINANCE CORPORATION, Plaintiff-Appellee, *v.* WILLARD MOWDY *et al.*, Defendants-Appellants.

(No. 72-234;

Second District—August 27, 1973.

David F. Smith, of Loves Park, for appellants.

Thomas D. Chase, of Elgin, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiff, Household Finance Corporation (HFC), recovered a judgment of $3511.58 plus costs on a promissory note contained in a retail installment sales contract for a swimming pool. HFC had purchased the contract from Diversified Industries, Inc. (Diversified), the seller of the pool, and not a party to this action. The buyers, Willard and Mary Mowdy, denied the debt, asserted defenses against the contract, and counterclaimed for a $500 down payment paid to Diversified. They now appeal the decision of the trial court finding HFC a holder in due course immune from defendants' claims and defenses against Diversified.

Defendants maintain they have valid defenses against Diversified in that Diversified fraudulently induced them to purchase a swimming pool through false advertising and an unlawful sales technique; and that Diversified breached its express guarantee in various respects. Defendants further contend that they had the right, under the Uniform Commercial Code, to revoke their acceptance of the pool and recover so much of the price ($500) as had been paid. Finally, defendants contend, based on section 2D of the Consumer Fraud Act (Ill. Rev. Stat. 1971, ch. 121½, par. 262D), that HFC is chargeable with the defenses and rights of action which could be asserted against the seller, Diversified.

Plaintiff relies on its status as a holder in due course, and contends that section 2D of the Consumer Fraud Act was satisfied by a notice provision

in the contract. Further, HFC claims that evidence showing fraudulent inducement was based on inadmissible hearsay.

Because of the view we take of the case, a detailed summary of the evidence is unnecessary. It is conceded that the obligation contained in the installment contract here in question is negotiable; and it is undisputed that HFC took the note for value and in good faith without notice of any claim or defense at the time the note and contract were assigned to HFC.

■■ A financial institution is a holder in due course if it takes a negotiable note for value in good faith without notice of a claim or defense and before it is due. (Ill. Rev. Stat. 1971, ch. 26, par. 3—302 (hereinafter UCC).) A holder in due course is entitled to the rights specified in UCC § 3—305. Specifically the holder takes the instrument free from the defenses that the buyer may assert against the seller-assignor except the so-called real defenses (*e.g.*, infancy, illegality, fraud in the execution, bankruptcy).

However, the buyers contend that the assigned contract and note failed to comply with the notice requirement of section 2D of the Consumer Fraud Act (Ill. Rev. Stat. 1971, ch. 121, par. 262D), so that they may assert against HFC any defenses and claims they have against Diversified, the seller.

Section 2D pertinently provides:

> "If a consumer in a retail installment sales transaction gives the seller a negotiable instrument in part or full payment for the merchandise which is the subject of a purchase order, retail charge agreement or retail installment sales contract before that merchandise is delivered or furnished to him, the assignment of that agreement or contract or the transfer of that negotiable instrument does not bar that consumer from asserting against the assignee or transferee any defense or right of action he may have against the seller unless (1) the contract or agreement contains, in at least 10-point bold type, the following notice:

> NOTICE TO BUYER

> You have the right to give the assignee named (or if no assignee is named, to give the seller) written notice of any defense or right of action which you may have against the seller within 5 days of delivery of the merchandise described herein. If a notice is not received within that time, you may not assert such defense or right of action against the assignee.'; and (2) such a notice is not given within the time period stated. Notice is received within the meaning of this Section if the seller or assignee has refused to accept delivery by certified or registered mail of such a notice,"

■■ HFC relies upon a notice contained in the contract which provides that the buyer may cancel the agreement if it has been signed at a place other than the seller's place of business by giving a notice within three days after the signing of the agreement. However, this notice is pursuant to another statute (Ill. Rev. Stat. 1971, ch. 121½, par. 262B), is designed for a different purpose, and does not fulfill the requirements of section 2D.

■■ Section 2D is unequivocal in its requirement. The statute is designed to combat a specific evil and is remediable in nature. It therefore should be liberally construed to effect its purpose of providing aggrieved buyers in explicit terms a method whereby they may communicate their complaints following delivery of purchased merchandise so as to preserve their claims and defenses against an assignee to whom payments will have to be made. Assuming that defendants did not advise HFC of possible defenses within a reasonable time by waiting 60 days following installation before giving written notice of cancellation, such fact would not obviate the requirement of inserting proper notice in the contract so that defendants would be informed of their rights under the Consumer Fraud Act.

While we hold that section 2D of the Consumer Fraud Act was not complied with in the installment contract assigned to HFC, we must also consider whether or not an express or implied clause in the contract which in substance purports to waive the buyer's defenses and claims against the assignee, HFC, even though they did not receive the notice required under section 2D.

UCC § 9—206(1) makes waiver of defense clauses valid subject to any statute or decision which establishes a different rule. Section 17 of the Retail Installment Sales Act (Ill. Rev. Stat. 1971, ch. 121½, par. 517) specifically validates agreements between buyer and seller not to assert against the assignee of retail installment contracts who takes for value, in good faith and without notice of defenses, any claim or defense the buyer may have against the seller.

❺ Whether the language of paragraph four on the reverse side of the contract stating, "Assignee shall not be chargeable with any obligations or liabilities of seller" operates to waive the buyers' right to assert defenses against HFC need not be decided here.[1] Even in the absence of an express waiver clause UCC § 9—206(1) implies an agreement not to assert defenses, if as part of one transaction, the buyer signs both a negotiable instrument and security agreement. (UCC § 9—206, Official

---

[1] Similar language has been held insufficient to constitute a waiver of defenses. See *Noblett v. General Electric Credit Corp.* (10th Cir. 1968), 400 F.2d 442.

Comment 1; 2 Bender's UCC Service (Coogan, Hogan, Vagts 1973) par. 28.03; 5A Bender's UCC Service (Hart & Willier 1973) par. 92.43.) The implied waiver would thus operate in the transaction before us,[2] unless there is an overriding consideration of public policy as expressed in section 2D of the Consumer Fraud Act.

We have held, prior to the enactment of section 2D, that a contractual waiver of certain defenses, such as are involved here, will be given effect, regardless of whether a negotiable note is taken in connection with the installment contract sale. (*First Nat. Bank of Elgin v. Husted* (1965), 57 Ill.App.2d 227, 232-234.) However, giving primacy to a waiver of defense clause would circumvent the remedy provided in section 2D so that dissatisfied consumer-buyers would not be able to preserve their claims and defenses against assignees to whom payments will have to be made. To avoid the operation of section 2D sellers would need merely to insert a waiver clause in their form contracts, which the average consumer-buyer may not read or understand. (See *Geiger Finance Co. v. Graham* (Ga. App. 1971), 182 S.E.2d 521, 523; Warren, 1956 U.Ill. L.F. 531, 543.) The circumvention becomes even more blatant, when, as in the instant case, the waiver of defense clause is implied by UCC § 9—206(1) without need for mention of it in the contract itself.

Second, the use of a waiver of defense clause has the effect of imparting the attributes of negotiability to an otherwise nonnegotiable document. (*Fairfield Credit Corp. v. Donnelly* (Conn. 1969), 264 A.2d 547, 550; *American Nat. Bank v. A. G. Sommerville, Inc.* (Cal. 1923), 216 P. 376, 378; *Geiger Finance Co. v. Graham* (Ga. App. 1971), 182 S.E.2d 521, 524.) In transactions in which either a negotiable note or a contract containing a waiver of defense clause evidences the buyer's obligation, the practical effect on the buyer is much the same. He is deprived of his ability to assert defenses he has on the contract against the seller's assignee. Thus the reasons for enacting section 2D to apply in consumer installment transactions in which a negotiable instrument is taken in payment are equally applicable to contracts which contain a waiver of defense clause, express or implied.

We therefore hold the waiver of defense clause implied in the instant installment contract does not nullify the requirements of section 2D. By our holding, the validity of waiver of defense clauses allowed by statute (Ill. Rev. Stat. 1971, ch. 121½, par. 517) is not destroyed, but only limited as is required by section 2D of the Consumer Fraud Act. If the notice provision as specified is complied with, and no claims or

---

[2] The installment sales contract retains title to the pool in the seller or asignee until the buyers complete their payment obligations. Thus the contract creates a security interest. UCC § 1—201(37); UCC § 9—102.

defenses are brought to the seller's or assignee's attention within the time and in the manner designated, then a waiver of defense clause would be effective to cut off later claims or defenses the buyer might seek to assert against an assignee.

■■ We therefore conclude that the trial court erred in holding that the plaintiff took the contract free of defenses defendants may have had against the original seller. Since the trial court did not pass upon the sufficiency of defendants' grounds for relief, the extent of the damage, if any, or the appropriateness of rescission or revocation of acceptance, the case will be remanded. To aid the court on remand we will briefly discuss two further issues that are raised by the parties.

■■ On the ground of hearsay, HFC objected to the introduction by defendants of certain statements made to them by a representative of Diversified which tended to show Diversified fraudulently induced the sale through "bait" advertising. (See Ill. Rev. Stat. 1971, ch. 121½, pars. 157.21(b), 262, 312(9).) The rule is long established that declarations against interest or admissions made before transfer by an assignor of a chose in action are admissible against the assignee to establish assertible claims and defenses. (*Anderson v. Brewing Co.* (1898), 173 Ill. 213, 216-217; *First Nat. Bank of Monmouth v. Strang* (1891), 138 Ill. 347, 354-355; *Hanchett v. Kimbark* (1886), 118 Ill. 121, 129-130; *Williams v. Judy* (1846), 8 (3 Gilm.) Ill. 282, 284-285.) Since we have held that defendants may assert against HFC any defenses or right of actions they may have against Diversified, the offered testimony should have been accepted.

The second issue which might have to be considered on remand if any of defendants' claims or defenses are sustained is whether section 2D authorizes recovery from HFC of moneys paid to Diversified as down payment before the assignment. Defendants rely on the language of section 2D which states that "any defense or *right of action*" that the consumer has against the seller may be asserted against the assignee if the required notice to buyer is not inserted in the contract. Plaintiff argues that such an operation of section 2D would be inequitable.

■■ We believe the buyer's ability to assert "rights of action" against the assignee provided by section 2D is limited by the amount of the debt assigned as indicated by the negotiable instrument or instruments taken by the assignee. The statute is designed only to operate in the context of an assignment of a negotiable instrument which was given as payment by a consumer on a retail installment sales contract. As such it is really the debt assigned which is subject to the buyer's defenses and rights of action, although it is against the assignee who holds the instrument acknowledging the debt that the buyer must assert his

claims. In no case, therefore, should the assignee's liability exceed the amount owed to him.

■■ Moreover, in our view, the rights of the buyers in the instant case under section 2D are similar to those provided buyers by virtue of UCC § 3—306, which describes the rights of one not a holder in due course. A reasonable reading of UCC § 3—306 indicates the buyer's rights against the holder are limited by the amount of the note or instrument transferred.[3] Thus the authority of buyers to assert defenses and rights of action should be construed as a right to set off these claims against the assignee's right to collect on the note he is holding. Such a construction of section 2D is in accord with the law generally regarding assignments of contract rights. See Restatement, Contracts sec. 167; 4 Corbin on Contracts, sec. 895, n. 16 (1971 Supp.)

Our interpretation of section 2D limiting the assignee's liability to amounts owing to him on the assignment is reinforced by the use of the identical words "any defense or right of action" in the statute in the quoted notice to buyer that must be given. If we were to hold that such language allowed affirmative liability to be assessed, assignees could be liable for amounts paid to the seller-assignor even though the contract contained the required notice to buyer in proper form. The imposition of such affirmative liability upon an assignee who has dealt in good faith with the assignor and has given value without notice of any defects at the time of the assignment would be a startling departure from prior law. In the absence of a clear expression of legislative intent, we would decline to adopt such an interpretation of section 2D.

The cause is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

GUILD, P. J., and DIXON, J., concur.

---

[3] "3—306. *Rights of One Not a Holder in Due Course.* Unless he has the rights of a holder in due course any person *takes the instrument subject to*

    (a) all valid claims to it on the part of any person; and

    (b) all defenses of any party which would be available in an action on a simple contract; and

    (c) the defenses of want or failure of consideration, non-performance of any condition precedent, non-delivery, or delivery for a special purpose (Section 3—408); and

    (d) the defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive indorsement. The claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party." (Emphasis added.)