CHICAGO CITY BANK & TRUST CO., Plaintiff-Appellant, *v.* DAVID
DAVIDSON *et al.*, Defendants-Appellees.

First District (5th Division)   No. 76-154

Opinion filed September 24, 1976.

Norman P. Wexler, of Wexler, Wexler and Heller, Ltd., of Chicago (Thomas D.
Donnelly, Jr., of counsel), for appellant.

No brief filed for appellees.

Mr. JUSTICE BARRETT delivered the opinion of the court:

This action was brought by plaintiff, Chicago City Bank & Trust Co., to collect a deficiency allegedly owed to it by defendants, David Davidson and Anthony Ruffin, under the terms of a retail installment sales contract. Plaintiff confessed judgment for the balance due under the contract in the amount of $1,698.67. Subsequently, plaintiff had summons issued to confirm the judgment by confession and defendants appeared *pro se*. The court, sitting without a jury, entered judgment for defendants. From this judgment plaintiff appeals and presents the following issue for review: where a retail installment sales contract for the purchase of an automobile has been assigned, does the failure of the assignor-seller to obtain physical damage insurance on the vehicle preclude the assignee from recovering a deficiency from defendant-buyer.

On September 27, 1974, defendants purchased a used, 1971 Ford Mustang from Bonnie Brook Ford pursuant to the terms of a retail installment contract. The same day Bonnie Brook assigned the contract to plaintiff for $2,157.18. In July, 1975, plaintiff repossessed the vehicle upon defendants' default and sold it at public auction on August 28, 1975. Although defendants purchased the vehicle for $2,305, it brought only $455 at the auction as the vehicle's front end was smashed in and both sides were damaged.

The retail installment contract and the assignment had been executed by Bonnie Brook and the parties on a form provided by plaintiff. The provisions pertinent to this appeal are: (1) the seller agreed to obtain physical damage insurance covering the vehicle which was itemized as a $328 charge for collision insurance, (2) the buyers agreed not to assert any claims or defenses against the assignee which they may have against the seller, and (3) default was defined as the failure of the buyers to keep the vehicle fully insured during the term of the contract. Defendants never received an insurance policy covering physical damage to the vehicle and had made no demand upon either the seller or plaintiff to produce the policy. The record does not indicate whether physical damage insurance had ever been purchased by the seller.

Defendant did not file a brief in this case. In such circumstances, the recent case of *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495, provides the standard of review:

> "We do not feel that a court of review should be compelled to serve as an advocate for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court. It may, however, if justice requires, do so. Also, it seems that if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an

appellee's brief, the court of review should decide the merits of the appeal."

Because the record is a simple one and the issue presented can easily be decided without the assistance of an appellee's brief, we shall decide this case on its merits.

OPINION

■■ Plaintiff contends that it was a holder in due course of the retail sales contract and, as such, was not subject to any defense which defendants may have had against the seller that would relieve their obligation to pay the deficiency to it. Essentially, plaintiff argues that defendants may raise only those defenses against it which are viable defenses against holders in due course (Ill. Rev. Stat. 1973, ch. 26, par. 3—305), and that the seller's failure to perform is not such a defense. A waiver of defenses clause has the effect of imparting some of the characteristics of negotiability to an otherwise nonnegotiable document and has the practical effect of putting the installment buyer in much the same position as if he had negotiated a negotiable instrument. (*Household Finance Corp. v. Mowdy* (1973), 13 Ill. App. 3d 822, 300 N.E.2d 863; *First National Bank v. Husted* (1965), 57 Ill. App. 2d 227, 205 N.E.2d 780.) However, plaintiff has cited no case, and we have found none, which actually confers upon the holder of a retail installment contract, containing a waiver of defenses clause, the status of a holder in due course. Although plaintiff is shielded by the waiver of defenses clause from all defenses which defendants may have against the seller, without the status of a holder in due course it cannot rely on the clause to exclusively limit defenses, which they may have against plaintiff itself, to those viable against holders in due course. While the clause certainly enhances its position as a secured party, plaintiff is not a holder in due course and its rights are to be determined by the law relating to secured transactions rather than the law concerning negotiable instruments.

The Uniform Commercial Code provides that a security interest arising under article 2 on sales is enforceable only to the extent of its compliance with the Motor Vehicle Retail Installment Sales Act. (Ill. Rev. Stat. 1973, ch. 26, par. 9—203(4).) The Act (Ill. Rev. Stat. 1973, ch. 121½, par. 561 *et seq.*) includes in its definition of a holder any "* * * sales finance agency or other assignee which purchases or makes a loan upon the retail installment contract." (Ill. Rev. Stat. 1973, ch. 121½, par. 562.12.) Regarding the issue of physical damage insurance the Act provides in pertinent part:

"All insurance which is purchased by the seller or holder and for which an amount is included in a contract must be written by an insurance company authorized to do business in the State and the

seller or holder is responsible as though such insurance were in force from the date the buyer takes possession of the vehicle. The holder of a contract which includes an amount for insurance purchased by the seller or holder must, within 30 days after the date of the contract, cause to be sent to the buyer the policies or certificates of insurance * * *." (Ill. Rev. Stat. 1973, ch. 121½, par. 569.)

Anyone who violates the Act, except by accident, is precluded from the recovery of "* * * any finance charge, and delinquency or collection charge or any refinance charge in connection with the related retail installment contract." Ill. Rev. Stat. 1973, ch. 121½, par. 584.

■■■ Clearly, the Act, in cases in which the seller agrees to provide physical damage insurance for a stated charge, has placed a duty *directly* upon the holder to bear the risk of loss for physical damage to the vehicle "as though such insurance were in force from the date the buyer takes possession of the vehicle" should the vehicle remain uninsured after the buyer is in possession and to see to it that the buyer actually receives the policy within 30 days. (Ill. Rev. Stat. 1973, ch. 121½, pars. 562.12, 569.) Plaintiff purchased the contract on the same date on which it was executed by defendants, the contract was executed on one of plaintiff's own forms, the face of the contract gave clear notice to plaintiff that the seller had agreed to provide the physical damage insurance at a stated premium, and yet plaintiff failed, without any explanation, to "cause to be sent to the buyer the policies or certificates of insurance * * *." (Ill. Rev. Stat. 1973, ch. 121½, par. 569.) Thus, we agree with the trial court that plaintiff bore the risk of loss and cannot recover the deficiency from defendants. Ill. Rev. Stat. 1973, ch. 121½, pars. 569, 584.

Plaintiff next contends that the trial court's decision necessarily assumed that the insurance coverage would have fully compensated it and, thus, was arbitrary and against the manifest weight of the evidence. We disagree. The record is completely devoid of evidence as to any amount to which plaintiff was entitled. While it is clear that finance, delinquency and collected charges were unrecoverable due to plaintiff's violation of the Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1973, ch. 121½, par. 584), there was absolutely no showing as to any collectible amount of principal which existed over and above the sum of the defendants' payments, the proceeds of the auction, and the amount of insurance proceeds for which plaintiff was responsible. Thus, to have awarded plaintiff any amount would have been the result of sheer speculation.

Lastly, plaintiff, relying upon a contract clause which defined default as the failure of the buyers to keep the vehicle fully insured during the term of the contract, contends that defendants breached the contract by not

390

notifying it of their failure to receive a policy of insurance from the seller. This argument is of no moment. The Motor Vehicle Retail Installment Sales Act required plaintiff to cause the policy to be sent to defendants without notice from them (Ill. Rev. Stat. 1973, ch. 121½, par. 569), and the provisions of the Act cannot be waived (Ill. Rev. Stat. 1973, ch. 121½, par. 572). Furthermore, the language chosen by plaintiff required defendants to insure the vehicle but was silent on the subject of notice and plaintiff failed to prove that the vehicle was not actually insured by the seller.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

LORENZ, P. J., and SULLIVAN, J., concur.