THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, Plaintiff-Appellant,
*v.* REGENCY INDUSTRIES, INC., *et al.*, Defendants-Appellees.

Fourth District No. 16874

Opinion filed June 9, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Joseph D. Keenan, III, Special Assistant Attorney General, of counsel), for appellant.

A. Bruce Schimberg, Shalom L. Kohn, and William F. Lloyd, all of Sidley & Austin, of Chicago, for appellees.

Lee Ensel, of Ensel, Jones, Blanchard & LaBarre, of Springfield, for appellee Chemical Bank.

Mr. JUSTICE GREEN delivered the opinion of the court:

On November 7, 1979, plaintiff, the Attorney General of the State of Illinois, brought suit in the circuit court of Sangamon County against defendants, Regency Industries, Inc. (Regency), certain of its agents and employees, and Chemical Bank, under section 7 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 267). Regency and its agents and employees were charged with conduct in making sales of swimming pools which violated section 2 of the Act (Ill. Rev. Stat. 1977, ch. 121½, par. 262), and the first three counts of the complaint were directed to them. Count IV was against Chemical Bank, alleged to be the ultimate assignee of installment sales contracts and mortgages executed by consumers and arising from the sales complained of in the first three counts.

No wrongdoing was alleged against Chemical Bank but the Attorney General requested, in count IV, an order that: (1) all claims and defenses which consumers to the contracts in issue had against Regency be declared available against Chemical Bank; (2) such contracts with Illinois consumers be declared rescinded, pools installed be removed, and property affected restored to its original condition all at Chemical Bank's expense; (3) Illinois consumers who had not fully paid for their pools and who elected to keep the pools be given a determination of amounts they owed Chemical Bank with any excess amount being cancelled and a determination of amounts owed them by Chemical Bank; (4) determination be made of the amount owed by Chemical Bank to Illinois consumers who have fully paid for their pools and elect to keep them; (5) real estate mortgages acquired by Chemical Bank against Illinois consumers and resulting from Regency sales as aforesaid be declared void; and (6) such other relief as justice and equity might require be granted. On November 24, 1980, count IV was dismissed upon Chemical Bank's motion. A subsequent finding was made by the trial court making the dismissal order appealable under Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)).

Section 7 provided in pertinent part:

> "Whenever the Attorney General has reason to believe that *any person is using, has used, or is about to use any method, act or practice declared by Section 2 of this Act to be unlawful,* and that proceedings would be in the public interest, he may bring an action in the name of the State *against such person* to restrain by temporary or permanent injunction the use of such method, act or practice. The Court, in its discretion, may exercise all powers necessary, including but not limited to: injunction; revocation, forfeiture or suspension of any license, charter, franchise, certificate or other evidence of authority of any person to do business in this State; appointment of a receiver; dissolution of domestic corporations or association suspension or termination of the right of foreign corporations or associations to do business in this State; and restitution." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 121½, par. 267.)

The trial court dismissed the count because Chemical Bank was not alleged to be using, to have used, or to be about to use any unlawful practice. The court concluded the statute did not authorize action against an innocent entity. On appeal, the Attorney General maintains that section 7, by itself or in combination with the trial court's inherent chancery powers, authorizes the action.

The Attorney General recognizes the failure of section 7 to make express provision for him to sue innocent holders of paper arising from

transactions of the type described in the complaint but he asserts the power to be implied. He notes that section 2D of the Act states that, in the absence of certain notice requirements having been met, the assignment of a sales contract or the transfer of a negotiable instrument *"does not bar* that consumer from asserting against the assignee or transferee any defense or *right of action* he may have against the seller * * *." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 121½, par. 262D.) From the foregoing, the Attorney General considers section 2D to not only prevent the assignment or transfer from cutting off the defenses which the consumer would otherwise have against a suit on the instrument but also to create a cause of action in favor of consumers against assignees if the consumer would have a similar cause of action against the seller. He then reasons that because the Act was intended to be liberally construed to effectuate its purpose (Ill. Rev. Stat. 1977, ch. 121½, par. 271a; *Hurlbert v. Cottier* (1978), 56 Ill. App. 3d 893, 372 N.E.2d 734) and because of the broad sweep of relief available to him against violators by the terms of section 7, the legislature intended for him to be entitled to the same relief against innocent assignees of contracts and mortgagees arising from violations of the Act.

The Attorney General further contends that, in any event, his admitted powers under the Act coupled with the circuit court's inherent equitable power to do complete justice enables him to proceed against Chemical Bank and supplies the necessary basis for count IV to state a cause of action. He cites *Porter v. Warner Holding Co.* (1946), 328 U.S. 395, 90 L. Ed. 1332, 66 S. Ct. 1086, a suit brought by the Administrator of the Office of Price Administration authorized by Federal statute to sue to enjoin landlords from charging excessive rent. Although no statutory provision authorized the administrator to join, as additional parties, tenants who claimed to have been overcharged, and to sue on their behalf for restitution, the United States Supreme Court held the district court's equitable powers sufficient to permit such a procedure in order that all rights in controversy might be adjudicated. The Attorney General also relies upon *Hauser v. Power* (1932), 351 Ill. 36, 183 N.E. 580, where the court held that in a suit where title to land was in issue, the mortgagee of a mortgage encumbering the property in issue was a necessary party to the suit.

We do not agree that the provisions of section 2D support the theory that the Attorney General may proceed against an innocent assignee. We agree with the opinion in *Household Finance Corp. v. Mowdy* (1973), 13 Ill. App. 3d 822, 300 N.E.2d 863. There, the appellate court reversed a judgment in favor of an innocent assignee plaintiff suing a consumer on an assigned installment sales contract and remanded for a new trial. The trial court had treated the assignee as a holder in due course even though the

notice requirements of section 2D were not met. In giving instructions for the retrial the court stated the consumer would have no right to restitution against the assignee for amounts paid to the seller-assignor. The appellate court interpreted section 2D as not imposing any "affirmative liability" upon the assignee when the contract failed to meet the notice requirements but merely to subject the innocent assignee to the defenses and setoffs the buyer might have against the seller (13 Ill. App. 3d 822, 829, 300 N.E.2d 863, 868). Thus, the total loss the innocent assignee might suffer would be limited to the amount owed on the assigned instrument. Even if suit had been brought here by a consumer, the most relief that could have been obtained would be a declaration limiting the liability of the consumer on an instrument or declaring it void, if no liability existed, and the restitution of sums paid to Chemical Bank but not owed.

The statement of section 2D that the transfer or assignment "does not bar" contains no indication of an intention to create a new cause of action against assignees and transferees, but merely indicates an intention to prevent them from being in the position of holders in due course. Thus, even a consumer, suing in his own behalf, would not be entitled to much of the relief requested by the Attorney General. We do not deem a provision keeping an assignee from becoming a holder in due course under certain circumstances to indicate a legislative intention to expand the powers of the Attorney General beyond those expressly stated.

The Attorney General cites *State v. Ralph Williams' North West Chrysler Plymouth, Inc.* (1973), 82 Wash. 2d 265, 510 P.2d 233; *Kugler v. Romain* (1971), 58 N.J. 522, 279 A.2d 640. Both of these cases are relied upon to show that the comparable statute in these States was interpreted to allow the Attorney General to bring a suit to enforce private contract rights. However, in neither of these cases was the Attorney General suing the innocent assignee of a contract. Rather, it appeared that all of the defendants in each suit was being held as directly responsible for perpetrating the deceptive practices.

Section 7 speaks in broad general terms of the type of relief the Attorney General may obtain but it is specific in saying that the relief may be obtained against violators of the Act. Sections 3 and 4 of the Act (Ill. Rev. Stat. 1977, ch. 121½, pars. 263, 264) empower the Attorney General to "[e]xamine * * * any person" pursuant to his investigative powers and to issue a subpoena and an oath or affirmation to "any person" in aid thereof. In the context of the Act, the broad scope of relief attempted to be granted negates rather than enhances the claim that the scope of persons subject to suit by the Attorney General should be broadly construed. Proceeding against law violators, even if relief to private individuals results thereby, is much more within the traditional function of an Attorney General than is the resolution of the private rights as between

innocent parties. Although the Act is to be given a liberal interpretation, we hold it to be insufficient, of itself, to authorize the Attorney General to proceed under count IV.

We also hold the equitable powers of the court insufficient to supplement the Act and make permissible the proceeding under count IV. No contention is made that section 7 provides for a class action. Thus, even when the Attorney General proceeds for relief, such as restitution, on behalf of a consumer against a violator, the proceeding does not dispose of the controversy, when the consumer is not a party, because the judgment is not binding upon that consumer. No consumers have been joined as parties here. No judgment concerning Chemical Bank would be binding upon any of the consumers to the transactions involved. In the context of the case, Chemical Bank's joinder cannot be justified upon the grounds that it was done for the purpose of effectuating a complete determination of any controversy.

The trial court properly struck and dismissed count IV. We affirm that judgment.

Affirmed.

WEBBER and MILLS, JJ., concur.