In re Leonard P. CARDILLO, Debtor.

**PEOPLE'S SAVINGS BANK OF BROCKTON, Plaintiff,**

v.

**Leonard P. CARDILLO, Defendant.**

**Bankruptcy No. 83–00118–JG.**
**Adv. No. A83–210–JG.**

United States Bankruptcy Court,
D. Massachusetts.

May 7, 1984.

---

Jeffrey W. Dukess, Keith, Reed, Wheatley & Frenette, Brockton, Mass., for plaintiff.

Joseph R. Doktor, Abelson & Cohen, Randolph, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The Plaintiff's Amended Complaint seeks a determination that the debtor's liability to the Plaintiff, People's Savings Bank of Brockton ("the Bank") is a nondischargeable debt pursuant to 11 U.S.C. Section 523(a)(6). The Bank contends that the debtors' sale of his 1980 Lincoln automobile in which the Bank had a security interest without the Bank's consent was a willful and malicious injury. The debtor admits that the debt owed is $9580.48 but denies grounds exist for nondischargeability. Based upon the testimony adduced and the documents admitted into evidence at trial, the Court finds the following facts pursuant to Bankruptcy Rule 7052.

In April 1981 the debtor, Leonard Cardillo ("Cardillo" or "the debtor") then a resident of Florida, contacted by telephone, Mr. James Volner, ("Volner") an officer of the Bank in Brockton, Massachusetts for

the purpose of obtaining an automobile loan to fund the purchase of a used 1980 Lincoln. At that time, the Bank held a security interest in the debtor's Chevrolet. The debtor and Volner had a previous banking relationship. Volner forwarded a loan application, promissory note and security agreement to Cardillo in Florida. The total price of the vehicle was $11,895. Cardillo was given a credit of $9,395 for trade in of the Chevrolet.

The Application for Credit to the Bank dated May 2, 1981 requested $1,500 to finance purchase of the Lincoln. The note, dated May 4, 1981, was sent to Florida and executed by Leonard and Sharon Cardillo. The amount financed was stated as $10,-731.04 with a finance charge of $3,639.68, for a total obligation of $14,370.72. The Note contains a notation that the loan is secured. According to the Note the net proceeds of the loan payable to Cardillo amounted to $1,500, because the prior car loan was being rolled over. A check for $1,500 was forwarded to Cardillo on May 4, 1981 together with a "Chattel Mortgage Security Agreement" with instructions that both borrowers execute it and return it to the Bank. The enclosure letter further instructed that the Bank be listed as lienholder on the title. Leonard and Sharon Cardillo executed the Security Agreement and returned it to the Bank. The Agreement clearly indicates that the 1980 Lincoln Versailles served as collateral for the Note, and further details the Bank's right to repossess in the case of default. The Bank notified the debtor's insurance company of its lien, but apparently, never took precautions to list itself as a secured party on the Certificate of Title.

The debtor made monthly payments on the loan of $299.39 until May 1982. Cardillo traded in the Lincoln in November 1981 without the consent of the Bank for a Jaguar, to be co-owned by his sister. It is undisputed that a balance of $9580.48 remains on the loan obligation. The debtor testified at trial that when he sold the Lincoln he did not realize that the Bank had a lien on the car or that its consent to the sale was required because he believed

the obligation to be a personal unsecured loan.

At issue is whether debtor's liability constitutes a nondischargeable debt pursuant to 11 U.S.C. Section 523(a)(6) which reads:

"(a) A discharge under 727 .... does not discharge an individual debtor from any debt....

(6) for willful and malicious injury by the debtor to another entity."

■ The exception covers a willful and malicious conversion. Notes of Committee on the Judiciary Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, p. 5787.

■ In order for the debt to come within the exception to discharge provided for in Section 523(a)(6), a creditor must show that the debtor's conduct was malicious, that is, with a conscious disregard of another's rights, and willful, that is, deliberate. *See In Re Trudeau,* 35 B.R. 185 (Bkrtcy.D. Mass.1983); *In Re Hawkins,* 6 B.R. 97 (Bkrtcy.W.D.Ky.1980); *In Re McCloud,* 7 B.R. 819 (Bkrtcy.M.D.Tenn.1980).

■ Where a debtor has disposed of collateral without the permission or knowledge of the lienholder, and the debtor understands the effect of the security agreement, such unauthorized disposition constitutes a willful and malicious conversion so as to render the debt arising therefrom nondischargeable. *In Re Thomas,* 36 B.R. 851 (Bkrtcy.W.D.Ky.1984); *In Re Donofrio,* 19 B.R. 734 (Bkrtcy.N.D.Ohio 1982); *In Re Scotella,* 18 B.R. 975 (Bkrtcy.N.D.Ill. 1982). The key element to this exception to discharge is the debtor's knowledge that he sold the property in violation of the security agreement. *See In Re Klix,* 23 B.R. 187 (Bkrtcy.E.D.Mich.1982). In determining whether the debtor had such knowledge, courts have considered a variety of factors: the debtor's experience and sophistication in business dealings; the debtor's understanding of the security agreement; the debtor's having read the agreement; and, the debtor's concealment of the transaction giving rise to the allegation of conversion.

*See In Re Donofrio,* 19 B.R. 734, 736 (Bkrtcy.W.D.Ohio 1982); *In Re Ries,* 22 B.R. 343, 347 (Bkrtcy.W.D.Wis.1982).

In the present case, the debtor argues that the Plaintiff Bank was not a secured creditor, and therefore his sale of the automobile without the Bank's consent could not be a conversion of collateral. This contention is without merit.

■ Florida law requires a secured party to note its lien on the motor vehicle certificate of title in order to enforce the lien against innocent purchasers and subsequent creditors of the vehicle owner. *F.S.A.* Section 319.22. *See N.A.D.A. Title Registration Book* (1983). Despite a bank's failure to perfect its lien by endorsing the security interest on the title, the security agreement is nonetheless enforceable against the original borrower because the failure to comply with the statutory requirement does not affect the transaction between the parties thereto. *See Major Credit Corp. v. Woolverton,* 99 So.2d 286 (Fla.1957); *First Galesburg National Bank and Trust v. Davidson,* 42 Ill.App.3d 386, 1 Ill.Dec. 128, 356 N.E.2d 128 (1976). Accordingly, in the present case the Bank's omission of its lien status from the title did not deprive the Bank of its interest in the vehicle. The security agreement was still valid as between the Bank and Cardillo, and the vehicle was subject to the Bank's security interest at the time it was sold in November 1981.

■ It is this Court's opinion that Cardillo knew of the Bank's security interest when he traded in the vehicle in November 1981. This knowledge can be inferred from the following circumstances. The Note and Security Agreement which the debtor read and executed clearly and unequivocally contain language of security. Secondly, the Disclosure Statement also states that the previous loan is included within the new amount financed. Both the May 1, 1981 letter forwarding the debtor the loan application, and the May 4, 1981 letter forwarding the debtor the net cash, refer to the Security Agreement, and the Bank's status as lienholder. The debtor never advised the Bank of the transfer of the collateral. Having observed the debtor as a witness, it is my conclusion that he is intelligent, and not unsophisticated in business dealings. It is clear that he knew when he traded in the Chevrolet that the Bank's lien had to be satisfied. The contention that he did not know that the Bank had to be paid when he traded in the Lincoln is incredulous. I find that the debtor's conversion of the Bank's rights in the collateral when he knew of the consequences constituted willful and malicious conversion sufficient to deny discharge of the debt in question pursuant to Section 523(a)(6).

Judgment is granted for the Plaintiff.